BRINKLEY v. RAILROAD CO.

(Filed May 31, 1904).

1. EMINENT DOMAIN—*Railroads—Right-of-way—Acts 1854-5, ch. 228.*

  A railroad company has a right to change the grade of its road-bed or to remove it to any point on its right-of-way.

2. EMINENT DOMAIN—*Railroads—Highways—The Code, sec. 1957.*

  ·A railroad company may make a change in a county road that does not necessarily impair its usefulness.

  DOUGLAS, J., dissenting.

ACTION by Henry Brinkley against the Southern Railroad Company, heard by *Judge T. J. Shaw* and a jury, at January (Special) Term, 1904, of the Superior Court of BURKE County. From a judgment for the defendant the plaintiff appealed.

*Avery & Avery* and *Avery & Ervin,* for the plaintiff.
*S. J. Ervin,* for the defendant.

MONTGOMERY, J. The question for consideration is whether or not a railroad company can use for any and all purposes connected with the conduct of railroad business the entire strip of land which it may have acquired by process of condemnation, or as a result of law growing out of the provisions of its charter. The defendant claims the right-of-way over the land in dispute under a purchase of the

interest in the same of the Western North Carolina Railroad Company, chartered by the General Assembly of this State. Laws 1854-'55, chapter 228. There was no condemnation of the land, but it is agreed that the Western North Carolina Railroad Company acquired the right-of-way over it by virtue of section 29 of the act of incorporation, which is in these words:

"And in the absence of any contract or contracts in relation to the lands through which said road may pass, it shall be presumed that the land over which said road may be constructed, together with one hundred feet on each side thereof, has been granted by the owner or owners to the company, and the said company shall have good right and title thereto, and shall have, hold and enjoy the same so long as it shall be used for the purposes of said road and no longer, unless the owner or owners shall apply for an assessment of the value of said land as hereinbefore directed within two years after that part of the said road has been located."

When that part of the road located on the land in dispute was finished, the track was laid in the center of the right-of-way and remained there until March, 1902, when the defendant changed the location by removing it about five feet to the southward from its original position for a part of the way on and along the right-of-way. The defendants also at the same time changed the grade of the original railroad track by substituting in one place a cut about six feet deep for a fill of about two and one-half feet in height. The plaintiff contends that that action of the defendant company was a new taking of his land, and for the trespass and taking he is entitled to compensation in damages. His contention, in his own words (in the brief), is: "That while the company could build side tracks on the same grade and inside of its right-of-way if necessary for corporate purposes, it had no right, first, to inflict additional damage upon the owner of

the servient tenement by changing a cut into a fill or a fill into a cut on his premises; second, that a change of location of the main line necessarily involved a change in the center of the right-of-way, and when the defendant moved its right-of-way five feet south of the original location and changed the center of that track it involved an additional taking of the land of the plaintiff on the south of the track, and a corresponding abandonment of a strip of equal width on the land of the abutting owner just north of Brinkley and on the opposite side of the track. This must be a new taking, being such a change as would change the location of the entire right-of-way along the plaintiff's front."

The right of the defendant to the free use of its right-of-way for railroad purposes is involved in the case. The question is not whether the Western North Carolina Railroad Company acquired the fee-simple interest or an easement in the right-of-way (that the question has been determined in favor of the latter view in *Blue v. Railroad,* 117 N. C., 644; *Railroad v. Sturgeon,* 120 N. C., 225; *Shields v. Railroad,* 129 N. C., 1); but rather whether under the easement the defendant has the right to use the whole of the right-of-way for railroad purposes, including the right to change the grade of the road-bed or to remove the location of its main track at any time to any point on the right-of-way. In the cases last above cited it was decided that railroad companies, if they should need the whole of the right-of-way for railroad purposes, had the right to use the whole. Some of those uses' were mentioned in the decisions, viz., road-bed and drains, side-tracks, and houses for their employees, warehouses and station houses, with convenient ingress and egress. Under those decisions railroad companies could build as many side tracks over any part of the right-of-way as might be necessary to a proper conduct of their business, with a view to the safety of the travelling public as well as for its

own and the public interests. Why, then, have they not the right to change the grade of the main track, or alter the location of the main track, whenever the safety of their service is improved or the public interests require it? We can see no reason to the contrary.

If the plaintiff's house was situated on the right-of-way at the time the railroad was finished, and he acquiesced in the appropriation, he would have rights if the railroad company should have afterwards built high embankments or made deep excavations so near his residence as to materially interfere with the free use and enjoyment of his home. But no such matter is now before us. There is no such claim or demand in the complaint. The naked question before us is this: Whether or not a railroad company has a right to change the grade of its road-bed or to remove it to any point on its right-of-way? We think it has that right.

In Mills on Eminent Domain, at section 211, the author says: "There is a vast difference between the location of a right-of-way and the location of a track on a right-of-way. The company has the right to locate its track at its will and pleasure upon any part of its right-of-way. One location of its track does not deprive it of the right to make another location." *Dougherty v. Railroad Co.,* 19 Mo. App., 419; *State v. Sioux City,* 43 Iowa, 501; *Munkers v. Railroad,* 60 Mo., 334; *Comrs. v. Haverhill,* 7 Allen, 523.

In Pierce on Railroads the writer says: "It (the railroad company) may lay its tracks, side tracks as well as main tracks, at any place within the location, and shift them from place to place within it."

The defendant had the right to make the change in the county road under subsections 3 and 5 of section 1957 of The Code.

No Error.

135——42

WALKER, J., concurring. This case, in my judgment, is correctly decided and for the reasons given in the opinion of the Court as written by *Mr. Justice Montgomery.* So far as the questions incidentally referred to in the opinion, and which relate to the control of a railway company over its right-of-way, are concerned, it is best that I should withhold even any intimation of opinion in regard to them until they are directly presented for decision, when my judgment can be formed after mature consideration and reflection. As I view those questions they involve important interests, not only of private individuals and of the railway companies but of the public as well.

DOUGLAS, J., dissenting. I do not think the real question at issue is correctly stated in the opinion of the Court, which assumes as a fact the ownership by the defendant of a right-of-way of two hundred feet in width. If the defendant railway company had actually condemned, or bought, or had given to it one hundred feet on each side of its track through the plaintiff's land the case would be different. I do not understand that there is any pretense that the defendant paid anything whatever for its right-of-way, or was actually given any more land than it actually occupied. Its only claim for two hundred feet of land seems to rest upon a naked presumption founded upon a legal fiction in an unpleaded private statute. If a neighbor asks me to give him a few roasting ears, and I tell him to help himself, am I to be held to have given away my entire corn crop? Suppose the agents of a railroad company come to a generous citizen and say to him, "We want to go through your land; we will locate our track over one hundred feet from your house and so nearly on grade as to permit you to cross at any point without putting you to any discomfort or inconvenience," and he should say, "Go ahead, I will not charge

you for merely going through my land." By what process of reasoning can such permission be construed into a grant under which the company, by altering its location and changing its grade, can take his land, injure his remaining property, and destroy his home? Oh, but it is said, he should have brought suit within two years. Brought suit for what? He had neither the right nor the inclination to bring suit for the land he had given to the railroad; and I am ignorant of any authority by which he could have brought suit for land which was claimed by no one else, and of which he alone was in actual and undisturbed possession adverse to all the world. I cannot bring myself to hold that the Legislature had either the power or the intention of taking the land of an individual and giving it to a corporation without compensation or the opportunity of obtaining it. Why should the corporation, the creature of the law, have any greater privileges than the citizen, the creator of the law?

I have no desire whatever to unnecessarily interfere in the slightest degree with the construction or operation of railroads, and I am aware that their public character and the proper performance of their public duties justify and require the exercise of certain powers and privileges not possessed by the individual. An instance is the exercise of the power of eminent domain inherent in the State as the concrete representative of the sovereign people. But all such privileges, given alone for the public benefit, are subordinate to the public welfare, and must be exercised with due regard to the inherent and inalienable rights of the individual. If they need his land let them take it, but let them pay for it. Let them take it openly and fairly so that he may know what they claim, and let them pay for it, not in legal fictions or irrebutable presumptions, but in money or money's worth. In the words of the Court of Appeals of New York, "Take, but pay." The plaintiff is not seeking to prevent the defend-

ant from changing the location and grade of its track, but simply to obtain compensation for the *additional* injury done to him by such change. My views upon these questions are fully expressed in my dissenting opinion in *Jones v. Comrs.*, 130 N. C., 457, and *Dargan v. Railroad*, 131 N. C., 626, wherein I have attempted to discuss principles which to me seem to underlie the foundations of our government.