SMITH v. NEWBERRY.

(Filed February 27, 1906).

*Justice's Court—Pleadings—Trial—Joinder of Causes of Action—Breach of Warranty—Deceit—Issues—Plea in Confession and Avoidance—Evidence—Instructions.*

1. When the parties come to trial in a justice's court, the justice should require the plaintiff to state "in a plain and direct manner the facts constituting the cause of action" and a denial by defendant or other facts constituting a defense.

2. Where two causes of action were set forth in a warrant before a justice of the peace (treated as a complaint), the judge properly submitted the issue upon the cause of action which was sustained by the evidence.

3. While an action for breach of warranty arises out of contract and deceit is for a tort, yet when they both arise out of the same transaction they may be joined.

4. The general rule is, that in the absence of a request by the complaining party, an exception will not lie to the failure to submit issues.

5. A defense in the nature of a plea in confession and avoidance must be specially pleaded.

6. In an action for damages for breach of warranty, where defendant's evidence was material to be considered by the jury upon the issue in regard to damages, a charge, that the jury might consider this evidence in making up their minds as to whether there was a warranty and breach thereof, is reversible error.

140——25

SMITH *v.* NEWBERRY.

ACTION by Thomas Smith against Y. Z. Newberry and another on appeal from the justice of the peace, heard by *Judge E. B. Jones* and a jury, at the Fall Term, 1905, of the Superior Court of CARTERET.

This was an action for breach of warranty in the sale of a horse. There were no pleadings, oral or written. The only indication of the plaintiff's cause of action is found in the warrant or summons issued by the justice of the peace, in which the defendant is commanded to appear and "answer the complaint of Thomas Smith for deceit and breach of warranty and false warranty in that the defendants fraudulently warranted a horse which they sold to plaintiff for ——— to be one which would not kick, when, in fact, he did kick, and the defendants well knew said horse would kick, to the plaintiff's damage in the sum of fifty dollars."

The return on appeal of the justice does not contain any statement of the plaintiff's complaint or the defendants' answer—simply stating that judgment was rendered, etc. The cause was tried on appeal to the Superior Court upon three issues, submited by the court as follows:

"1. Did the defendants warrant the horse not to kick?

"2. Was there a breach of said warranty?

"3. What damage has plaintiff sustained?"

Defendants objected to the first and second issues and requested the court to submit issues as in an action for deceit, etc. To the refusal to do so, defendants excepted. The jury having answered the issues in the affirmative and assessed the damages at $35, judgment was rendered accordingly and defendants appealed.

*Simmons & Ward* for the plaintiff.
*D. L. Ward* for the defendants.

CONNOR, J. The defendants urged two exceptions in this court. The first was to the refusal of His Honor to submit

the issue as for a deceit and to charge the jury that the plaintiff must show a *scienter*. Confusion, in respect to the character of the action, grows out of the failure of the justice to observe the requirement of section 1459, Revisal, that "The complaint must state in a plain and direct manner the facts constituting the cause of action." This may be done orally and is not required to be "in any particular form, but must be such as to enable a person of common understanding to know what is meant." Section 1463. The form in which the justice should make his docket entries, noting the pleadings, etc., is prescribed by section 1496 (No. 38), and the "Return to notice of appeal," *ibid.*, (No. 40). It is usual in the summons to indicate in general terms, the basis of the demand whether for non-payment of an amount due on account or promissory note or for damages for breach of contract, but when the parties come to trial the justice should require them to state "in a plain and direct manner the facts constituting the cause of action"—and a denial by defendant or other facts constituting a defense. Large power of amendment is vested in the Superior Court, limited only by the condition that the amendment show a cause of action within the jurisdiction of the justice. *Mfg. Co. v. Barrett,* 95 N. C., 36; *Planing Mills v. McNinch,* 99 N. C., 517. Treating the warrant as a complaint, two causes of action are set forth—breach of warranty and deceit. If the deefndants had so desired they might have called upon the plaintiff to make his complaint more specific, either in the justice's court or after the case reached the Superior Court upon appeal. Revisal, 496; cases cited in Clark's Code, section 261. In the absence of any more definite pleadings or any motion to make them so, His Honor properly submitted the issue upon the cause of action which seemed and, as the jury found, was sustained by the evidence. If the plaintiff was content to rely upon a cause of action entirely contractual in which he could call only for execution against the property of the de-

fendants, and waive the cause upon which he may have had an execution against the person, we do not see how the defendants can complain. The evidence did not show any *scienter* and if an issue had been submitted upon the deceit His Honor would have been justified in so instructing the jury. We do not understand the defendants as contending that the two causes of action could not be joined, or were not within the jurisdiction of the justice. If they desired to raise the first objection they should have demurred for misjoinder and if the second for want of jurisdiction. It is sufficient to say that neither objection could have been sustained. While it is true that an action for breach of warranty arises out of contract and deceit is for a tort, when they both arise out of the same transaction they may be joined. *Solomon v. Bates,* 118 N. C., 311. We find no error in His Honor's ruling in this respect. The second exception is directed to His Honor's charge. Plaintiff testified to the transaction, the warranty and breach. He says that after driving the horse, which was the subject of the controversy, he returned to defendants." "He refused to exchange. I left the man there and went home. I came back and tried to compromise. They got cart and harness and my pony." Defendant Newberry testified to the transaction, denying warranty, etc. After describing manner in which plaintiff drove the horse away, he says: "He came back and I swapped him another mare and he paid me $10 to boot. I told him when he came first here were his papers, and now take the cart and harness and go. He said 'no.' He came to trade and he was going to trade. I finally did get him another horse for $10 to boot. He gave me road cart and harness for $5 of $10 to boot, and gave note for another $5. He then brought this mare back and said his wife said they could not raise the money for the mare. I kept the mare and bought the pony." Plaintiff introduced no evidence in reply to the foregoing testimony. His Honor, after reciting this portion of defendant's testimony, said:

"The court charges you that you may consider this evidence in making up your minds as to whether there was a warranty and a breach as contended by plaintiff." Defendants excepted.

We are unable to see how this testimony cast any light upon the question whether there was a warranty. It was most material upon two other phases of the controversy. If true, it tended to show a new contract substituted for the original one in which the jury found there was a warranty. Plaintiff says that when he found that the horse kicked he carried it back "and tried to compromise." He concludes his testimony with the statement "They got cart and harness and · my pony." The defendant testifies that he did make a new trade with plaintiff, taking the mare back and giving him another one for ten dollars to boot, a part of which was paid by the delivery of "cart and harness," and that a second arrangement was made by which, at the request of the plaintiff, he took the mare back. If all of this is true, whatever rights the plaintiff had under the original contract, were surrendered by the second and third contracts. It is but common fairness to require men to deal frankly with each other and when new and substituted contracts are made, to say whether they intend to reserve controverted claims and demands growing out of the original transaction. It may well be that in making the second trade, both parties took into account the conditions attaching to the first. If they did not do so, they should have said so. The defendants are confronted with the difficulty that no issue was asked upon this phase of the testimony, and while there are a few carefully guarded exceptions, the general rule is that in the absence of a request by the complaining party, an exception will not lie to the failure to submit issues. The testimony presented a defense in the nature of a plea in confession and avoidance. We have held, at this term, *Smith v. Lumber Co.,* following other decisions, that a defense of this character must be specially pleaded. We think, however, that the testimony was material to be con-

sidered by the jury upon the third issue in regard to damages. While, for the reasons stated, the defendants are precluded from using the testimony in bar of the action, and that upon the finding on the first and second issues they are in any aspect liable for nominal damages, they should be permitted to have the jury consider the testimony upon the damage sustained by the breach of the warranty. If, by the second trade, the plaintiff accepted in exchange for the mare which kicked, another mare, for which he paid ten dollars to boot, of the full value of the consideration paid for the first mare, his damage for the breach of the warranty would be but nominal. While it is true that in the absence of any request to do so, the failure of the judge to present this phase of the testimony could not be assigned as error, yet, when he undertakes to instruct the jury in respect to the testimony and commits an error, it is reviewable upon exception. The jury gave the plaintiff $35 damage, which was about the value of the pony, less the mortgage upon it paid by defendants. It is evident that no consideration was given to the testimony of defendant upon the second trade. We have felt embarrassment in disposing of this appeal by reason of the condition of the record. We find that a very large bill of cost has accumulated. The case presents a striking illustration of the danger of departing from well settled rules of pleading. If at the beginning the parties had been brought to a simple statement of their controversy and the real issues fairly presented, the long delay—three years—and the large expense incurred, would have been saved. The purpose of The Code system of pleading is to bring the parties at their entrance into court to an issue either of law or fact and a speedy trial upon the merits. We feel constrained to remand this case for a new trial to the end that the jury be instructed to consider the evidence of defendant Newberry—with such other evidence as may be introduced, upon the question of plaintiff's damage. The cost of this court will be divided equally between the parties.

New Trial.