V. B. MOORE v. CAROLINA POWER AND LIGHT COMPANY.

(Filed 15 October, 1913.)

1. **Municipal Corporations—Streets and Sidewalks—Raleigh—Title in State—Municipal Control.**

   While the title to certain streets in the city of Raleigh was reserved by the State of North Carolina, the control of the city over these streets is the same as in any other cities or towns in the State, and it has the same discretionary right to cut down

MOORE *v.* POWER CO.

or trim up trees bordering the streets for the purpose of govern-
ment or management, which can only be restrained in cases of
willfulness or oppression.

2. **Municipal Corporations — Quasi-public Corporations — Charter
   Powers.**

   A municipal corporation cannot transfer to a *quasi*-public cor-
   poration the rights that it exercises by virtue of its municipal
   character.

3. **Same—Injury to Shade Trees—Damages—Injunction.**

   Where a *quasi*-public corporation, authorized by its municipal
   charter to place its poles and string its wires along the streets
   of a city, threatens the property rights in the shade trees along
   the sidewalks of adjoining owners, by cutting or trimming the
   trees, without affording them compensation, an injunction will
   issue irrespective of whether or not the cutting was about to be
   done unnecessarily, wantonly, or oppressively.

4. **Corporations—Shade Trees—Wanton Injury—Punitive Damages.**

   Punitive damages may be awarded against a corporation au-
   thorized by its charter to place its poles and string its wires
   along a city street, for wantonness or oppression in cutting
   shade trees on the sidewalks along its route to the damage of
   abutting owners.

5. **Corporations—Injury to Shade Trees—Measure of Damages—De-
   terioration of Property.**

   An abutting owner may recover damages from a *quasi*-public
   corporation for cutting or trimming shade trees, on the sidewalk
   in front of his property, done by it for the purpose of stringing
   its wires, etc., as authorized by its charter, to the extent that
   his property is thereby depreciated in value.

6. **Actions, Form of—Injury to Shade Trees—Condemnation—Meas-
   ure of Damages.**

   Forms of action are not now regarded of supreme importance,
   and the measure of damages for injury to shade trees done by a
   *quasi*-public corporation in pursuance of its charter powers is
   the same, whether the action be brought by the person who has
   a property right in the trees or by the corporation in condemna-
   tion proceedings.

APPEAL by plaintiff from *Carter, J.,* at April Term, 1913,
of WAKE.

*Peele & Maynard for plaintiff.*
*James H. Pou for defendant.*

CLARK, C. J. This is an action to recover damages to the value of plaintiff's lot in Raleigh, by cutting limbs from and disfiguring an ornamental shade tree which stood on the sidewalk in front of the plaintiff's residence. The defendant claimed that it had a right to cut the limbs out of the way of its wires because necessary for its purposes, without incurring any liability to the owner of the property abutting the sidewalk whereon the tree stood, and further, that the fee simple of the streets, including the sidewalk, was in the State of North Carolina, and hence that the plaintiff had no property rights in the tree.

It is historically true that the mile square upon which the city of Raleigh was originally located and within which limits this tree stood was purchased by the State, and the city, so far as it is within those limits, was divided into lots and sold, reserving the title to the streets in the State. But so far as it affects this matter, and all matters, except possibly in exceptional cases, the control of the municipality over its streets is the same in Raleigh as in all the other cities and towns in the State. The city for the purpose of its government and management can, in its discretion, cut down or trim up the trees bordering the streets, and cannot be restrained unless in cases of willfulness or oppression. *Jeffress v. Greenville,* 154 N. C., 499; *Rosenthal v. Goldsboro,* 149 N. C., 128; *Tate v. Greensboro,* 114 N. C., 392. But, subject to such right of the city government, the abutting owner has an easement or property in the shade trees standing along the sidewalk which the law will protect. *Brown v. Electric Co.,* 138 N. C., 345. The city cannot transfer to any individual or to a *quasi*-public corporation for its convenience and profit this superior right, which it can exercise only for the public benefit.

It is also true that the defendant company is empowered by its charter and by the permission of the city to place its poles and wires along the streets for the purpose of carrying the electric light. But it does not follow that therefore it can invade the property rights of the plaintiff in his shade tree without compensation, nor that the plaintiff would not be entitled to an injunction in case the cutting of the tree was

about to be done unnecessarily or wantonly or oppressively. The defendant is a public-service corporation, or, as it is usually termed, a *quasi*-public corporation, and can take the property of the plaintiff, but only upon compensation. This is true, even if it had been necessary for the defendant to run its wires through the tree and to cut the limbs, for the defendant cannot invade the property rights of the plaintiff without compensation because convenient or necessary for its benefit to do so.

As a matter of fact, it could not be necessary, because the wires could have been strung above the top of the trees, or could have swerved either side, or could have been placed underground, as is required in many cities, and even in North Carolina in progressive towns like Charlotte, for instance, on some of its streets. The latter, indeed, must ultimately be required everywhere, for the present system of stringing the wires above ground is unsafe for the public, as we have an instance in *Haynes v. Gas Co.,* 114 N. C., 203, where a broken wire hanging down became charged by contact with a trolley wire, causing the death of a boy passing by. The overhead wires are very unsightly, are troublesome in cases of fires, and are subject to interruption by storms. They are allowed only as a matter of economy on the part of the light company, and not to entitle them to take the property of others as a matter of right.

The plaintiff is entitled to compensation for the injury done him, and if there was wantonness or oppression, or other bad motive, punitive damages might be added. The subject has been so fully discussed and elucidated in *Brown v. Electric Co.,* 138 N. C., 533, that we need not do more than refer to the reasoning and the conclusions reached in that case.

The plaintiff avers that a great inducement to him in buying the premises was the ornamentation of his ground by this tree and others, and that he spent considerable money in improving and beautifying them. His Honor erred in instructing the jury that the plaintiff was entitled to recover only if the cutting of the limbs had been done in a negligent or unskillful manner. That would add to the amount of the dam-

ages which he would be entitled to recover. But it is not the measure of his rights, for he is entitled to compensation for the deterioration, if any, in the value of his property, from the trimming or cutting of the tree, however skillfully done, just as he would have been if the tree had been cut down, however skillfully and carefully and even necessarily the tree had been felled. The plaintiff's property in the tree (subject to the superior right of the city to cut or remove it for public purposes) and his right to enhance the value of his lot by its improvement, on which he had spent care and money, entitle him to compensation for the loss which he may have sustained by the act which the defendant has done for its own convenience and advantage.

It was suggested that the defendant might have obtained the right to trim the tree, or even to cut it down if necessary, under the right of eminent domain, and therefore that the plaintiff could recover damages only in the same method. But forms of action no longer are matters of supreme importance. If the defendant so desires, this may be styled an action to recover damages under the right of eminent domain. The plaintiff's property rights have been invaded by the defendant for its own benefit, and the plaintiff is entitled to recover compensation therefor, and is not restricted to such damages as may have been caused by the unskillfulness or negligence of the defendant.

Error.

BROWN, J., and HOKE, J., dissent.