ROYSTER GUANO COMPANY OF VIRGINIA, INC., v. THE LUMBER COMPANY ET ALS.

(Filed 24 February, 1915.)

1. **Equity—Injunction, Permanent—Restraining Order—Serious Issues.**
    Where a permanent injunction is the sole subject of an action, and the evidence raises serious questions as to the facts affecting the plaintiff's rights, the temporary injunction should be continued to the final hearing.

2. **Municipal Corporations—Cities and Towns—Streets—Public Uses—Private Rights.**
    The public streets of a city are dedicated to the public and for public use, and though subject to the control and management of the city authorities, they have not the power, generally speaking, to grant an easement or right other than of a public nature.

**3. Same—Nuisance—Injunction.**

Where a private enterprise has been given by a city the right to erect and use an electric trolley or hoist, for transporting its wares across a public street, 12 feet above the ground, and a permanent injunction is sought by the plaintiff, with evidence tending to show it was a serious detriment to his business in the use of the street, having the effect of frightening horses and dangerous to others using the street, it is held that such use of the street is a nuisance, that the evidence raises a serious question, and that a restraining order should be continued to the final hearing.

APPEAL by plaintiff from *Ferguson, J.,* at chambers in Wilson, 9 October, 1914; from EDGECOMBE.

Civil action pending in the Superior Court of Edgecombe County, heard by Ferguson, judge, on a motion for an injunction to the final hearing. The motion was denied, and the plaintiff appealed.

*Gilliam & Gilliam for plaintiff.*
*Allsbrook & Phillips for defendant.*

BROWN, J. The object of this action is to enjoin the defendants from erecting across a public street of the town of Tarboro an electric trolley or hoist. The facts are, as set forth in the complaint and supported by affidavits, that the defendants have built an electric trolley or hoist, supported by posts, across the alleged public street of the town of Tarboro leading from the East Carolina Railway to the river, over which it is proposed to transport the logs and other articles of transportation from Tar River to the defendant's factory, and also much of its finished product.

This hoist is about 12 feet above the level of the ground. Under it every team must pass in going to and fro from the plaintiff's factory and the public boat landing on Tar River. The street in question has been opened and in public use for a great many years, and is the only passageway to the plaintiff's factory or to the boat landing.

Many affidavits tend to prove that the operation of this hoist is calculated to frighten teams and is attended with danger; that many customers of the plaintiff would be unwilling to patronize the plaintiff and risk their teams passing under it; that by reason of the obstruction of this street by this electric hoist the plaintiff would lose many customers, would have to abandon its plant, and would suffer irreparable damage. The defendants are private corporations.

In August, 1914, H. C. Bridgers, who is likewise controlling owner of The Lumber Company, appeared before the board of commissioners of the town of Tarboro and asked permission to install an electric hoist *across the street leading to the boat landing* for the purpose of loading and unloading freight of that company. He stated to the board that the public would not be inconvenienced.

At a regular meeting of the board on 10 August the following proceedings were had, as appears from the minutes of said board: "Commissioners J. D. Jenkins and M. P. Williams, as representing the committee appointed to investigate the request of Mr. H. C. Bridgers, asking the board's permission to *cross the street* leading to the boat landing with electric hoist, reported they saw no objection to letting this hoist be installed, provided the bottom of said hoist be 12 feet above the street, and if this became a nuisance, that the board had a right to rescind order at a later date. On motion of Commissioner R. H. Hyman, it was ordered by the board that permission be granted Mr. Bridgers to *cross the street* with his hoist, provided the town had legal authority to do so, and if not, Mr. Bridgers was to remove the hoist."

The above order of the commissioners is the authority under which the electric hoist was erected. That order seems to recognize the fact that the passway over which the hoist was located is a public street of the town. It is well settled that where a permanent injunction is the sole object of the action, and the evidence raises serious question as to the facts affecting the plaintiff's right, the temporary injunction should be continued to the final hearing. *Stancil v. Joyner,* 159 N. C., 617; *Tice v. Whitaker,* 144 N. C., 507.

It is generally held that the public streets of a city are dedicated to the public and for public use. While they are subject to the control and management of the city authorities, they have not power to alien or otherwise encumber the streets, but must hold them for public uses only, and they have no right, generally speaking, to grant an easement or right other than of a public nature. A permanent encroachment or a permanent obstruction of it is in law a nuisance.

We have held in *Butler v. Tobacco Co.,* 152 N. C., 416: "The town authorities hold the streets in trust for the purpose of public traffic, and cannot, in the absence of statutory power, grant to any one the right to obstruct the street, to the inconvenience of the public, even for public purposes, *and for private purposes not at all,"* . . . "for the entire street from side to side and from end to end belongs to the public."

In *S. v. Edens,* 85 N. C., 522, it is said: "Any permanent obstruction to a permanent highway, such as would be caused by the erection of a fence or building thereon, is of itself a nuisance, though it should not operate as an actual obstruction to travel, or work a positive inconvenience to any one. It is an encroachment upon a public right, and as such is not permitted by law to be done with impunity."

This case is cited in the note of *Hagerstown v. Whitner,* 39 L..R. A., p. 662, where there is a lengthy discussion of obstruction of public streets by buildings, fences, and the like. This case and notes fully and abundantly sustain the proposition that any unreasonable interruption of the

public use of a street is an unlawful obstruction, and a permanent obstruction in law a nuisance. See, also, *Hibbard v. City of Chicago,* 40 L. R. A., 621; *Callahan v. Gilman,* (New York) 1 Am. St. R., 831. In the latter case it is said: "The primary purpose of streets is use by the public for travel and transportation, and the general rule is that any obstruction of a street or encroachment thereon which interferes with such use is a public nuisance. But there are exceptions to the general rule, born of necessity and justified by public convenience. An abutting owner engaged in building may temporarily encroach upon a street by the deposit of building material. A tradesman may convey goods in the street to and from his adjoining store. A coach or omnibus may stop in the street to take up or set down passengers. But all such interruptions and obstructions of streets must be justified by necessity and must, also, be reasonable with reference to the rights of the public, which may not be sacrificed or disregarded." *Abendroth v. R. R.,* 19 Am. St. R., 461; *White v. R. R.,* 113 N. C., 610; 28 Cyc., p. 873, where it is said: "Except where authorized by the Legislature, a municipality has no power to grant the right to use a street in a manner not consistent with the right of the public."

We think his Honor erred in dissolving the injunction.

Reversed.