CINCINNATI, N. O. & T. P. RY. Co. *et al.* *v.* CITY OF CHAT-
TANOOGA.

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

ALLISON, LYNCH & PHILLIPS, for complainants.

TATUM, ANDERSON & TATUM, for defendant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The complainants are several railway corporations comprising the Southern Railway System. They, in conjunction with the Nashville, Chattanooga & St. Louis Railway, entered into a contract with the city of Chattanooga for the construction of a viaduct where their several tracks cross East Third street at grade. No provision was made in the contract for compensating abutting owners for the destruction of their rights of ingress and egress as a result of the construction of said viaduct. The question for decision is the liability for said damages as between the railway companies and the city.

The Tennessee Electric Power Company, whose trolley line was to cross said viaduct, contributed $25,000 to the project, but it is not a party to this controversy.

The city and the power company are designated as parties of the first part in said contract, and the railway companies as parties of the second part. The pertinent provisions of the contract are as follows:

"1. That the parties of the second part will build and construct, and thereafter maintain at their own cost and expense, except as hereinafter provided, pursuant to the requirements of the provisions of Ordinances Nos. 1729 and 1741, passed by the Board of Commissioners of the City of Chattanooga on September 4, 1923, and February 26, 1924, respectively, a suitable and sufficient bridge or viaduct with necessary approaches to carry East Third Street of the City and the street rail-

way tracks of said Tennessee Electric Power Company over, above grade, the railroad tracks of the parties of the second part at the intersection thereof with East Third Street in said City of Chattanooga; said work to be done and performed in strict accord with plans and specifications to be prepared by the parties of the second part and approved on behalf of the parties of the first part by their respective representatives thereunto duly authorized.

"2. That said The Cincinnati, New Orleans and Texas Pacific Railway Company shall have charge and control of the work of constructing the said viaduct and each of the parties hereto does hereby constitute and appoint said The Cincinnati, New Orleans and Texas Pacific Railway Company as its agent to perform said work in accordance with the terms of this agreement. . . .

"5. That the parties of the first part will not assume or pay, to the parties of the second part any damages sustained by said parties of the second part by reason of the change of grade where the railroad property abuts upon the approaches to said viaduct.

"6. That each of said parties of the first part agrees to pay to the parties of the second part, in cash, on or before the date of completion of said viaduct, the sum of twenty-five thousand dollars ($25,000); and the parties of the second part, in consideration of the payment of twenty-five thousand dollars ($25,000), by the City of Chattanooga, one of the parties of the first part, agree to release the said City from all claims for damages to abutting property owned by the parties of the second part, resulting from the construction of said viaduct and approaches. . . .

"8. That the said City of Chattanooga will by such

proper municipal action as may be necessary, abandon that portion of existing Harrison Avenue, or East Third Street, for which the said viaduct or bridge will be substituted, and will also abandon all other streets or portions of streets, which may now be open or may have been dedicated to public use, within the limits of the yard proposed to be built by the parties of the second part, as shown in red on map hereto attached.

"9. That the said City of Chattanooga will reestablish the grade of East Third Street affected by the construction of the said viaduct, and the said grade when reestablished will not be lower than the elevation of 664.486 U. S. G. S. datum at the end of the bridge, which elevation equals 43.50 according to City datum, and will, at its own cost, raise the grade of said street to such elevation.

"10. That the said City of Chattanooga will, at its own cost, relocate or cause to be relocated, all buildings that are within that part of said street required for the construction of said viaduct."

The railway companies constructed said viaduct at a cost of $180,000.

When suits were instituted and threatened by the abutting property owners, the railway companies and the city created a fund which was used in compensating said owners, it being agreed that this action was not to prejudice the rights of either party with respect to the liability for said damages as between themselves.

Under the ordinances referred to the railway companies were required to build said viaduct and its approaches and maintain same at their own expense. The interested parties, upon the passage of said ordinances, began negotiations which resulted in said contract. These

ordinances recite that the construction of said viaduct is necessary on account of the increasing traffic on said street, and the dangerous menace to life and limb at said crossing.

By the bill complainants assert that the city was primarily liable for such damages, and seek to recover from it upon that theory the sum of $6,855.51.

On the other hand, the city contends that the railway companies were primarily liable for said damages, and that complainants are entitled to no relief.

The cause was heard upon a stipulation of facts, from which it appears that the railway companies would not have built said viaduct but for the ordinances requiring it to do so. It further appears from the uncontradicted testimony of Mr. Tatum, city attorney, made a part of the stipulation, that no provision for the payment of such damages was provided for in the contract, for the reason that the parties were unable to agree as to that matter, which was left open for future determination.

Counsel for complainants quote from the brief of the city as follows:

"The defendant, City of Chattanooga, by proper ordinance closed the streets mentioned in paragraph eight of the contract. The City of Chattanooga also raised the grade of East Third Street as provided in paragraph nine of the contract. The damage to abutting property owners on account of the raising of the grade of East Third was paid by the defendant, City of Chattanooga, exclusively. No part of the $15,000 fund provided by the Railroad Companies and the City pursuant to the provisions of the contract filed as Exhibit B to the original bill were used for this purpose. This fund was used exclusively for paying damages to owners of prop-

erty abutting on the approaches of the viaduct, the ingress and egress to a part of this property having been completely destroyed by the construction of the viaduct and approaches while the ingress and egress of other owners of property abutting on the approaches was materially interfered with.''

These facts may, therefore, be accepted as true.

■ From the foregoing it would appear that the damages to the abutting property owners on account of the raising of the grade of East Third Street was paid by the city, while the $15,000 fund was used to pay property owners abutting on the approaches for the destruction of their rights of ingress and egress. There is no express provision in the contract by which the city directly obligated itself to pay property owners for damages resulting from the raising of the grade of said street. Since the city agreed to raise said grade at its own cost, it assumed that the compensation of property owners for injuries resulting therefrom was a part of said costs. Upon this basis it is contended by the city that since the railway companies contracted to construct said viaduct and the approaches thereto ''at their own cost and expense,'' the remuneration of abutting property owners whose rights of ingress and egress were destroyed was a necessary part of said costs. In this we concur.

■ The right of the city to require the railway companies to construct said viaduct and approaches entirely at their own expense is not questioned, and is well supported by the authorities. 22 R. C. L. 787; 51 C. J. 684; *Cincinnati, I. & W. R. Co.* v. *Connersville,* 218 U. S. 336, 31 S. Ct. 93, 94, 54 L. Ed. 1060, 20 Ann. Cas. 1206; *Chattanooga* v. *Railroad,* 128 Tenn. 399, 161 S. W. 1000; *Durham* v. *Southern R. Co.,* 185 N. C. 240, 117 S. E. 17,

35 A. L. R. 1313, and annotation beginning on page 1322, where the authorities have been collected.

The underlying principle in support of such a requirement is thus stated in *Cincinnati, I. & W. R. Co.* v. *Connersville, supra*: "The railway company accepted its franchise from the state, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority, within whose limits the company's business was conducted. This court has said that 'the power, whether called police, governmental, or legislative, exists in each state, by appropriate enactments not forbidden by its own Constitution or by the Constitution of the United States, to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good.' *Lake Shore & M. S. R. Co.* v. *Ohio,* 173 U. S. 285, 297, 43 L. Ed. 702, 706, 19 S. Ct. 465, 470."

In the numerous cases which we have examined emphasis is placed upon the term "the entire expense," which, in our opinion, would necessarily include compensating property owners for the destruction of their rights of ingress and egress. The duty of eliminating grade crossings, where the public safety demands it, is an obligation which the railway companies assumed, and in its discharge it is incumbent upon them to compensate property owners for any damage inflicted. The railway companies necessarily knew that the construction of this viaduct would result in damages to the abut-

ting property owners, and endeavored to persuade the city to assume that obligation, which it declined to do.

Several cases have been cited where the abolition of a grade crossing was made by a railway of its own volition, with the consent of the municipality, in which the railway was held primarily liable for incidental damages. If it is the duty of a railway to eliminate a grade crossing in the interest of the public, it matters not whether it does so voluntarily or under compulsion. If liable for incidental damages in the one instance, it is liable in the other also.

In this particular case the railway companies were greatly benefited by this improvement. They owned two large tracts of land on the north and south sides of East Third Street. By virtue of this contract they were enabled to connect these two tracts of land and establish extensive and valuable switching yards thereon. On the whole, we consider the contribution made by the city to this improvement a liberal one.

The chancellor dismissed the bill, and his decree will be affirmed.