BRYANT N. THOMPSON AND WIFE, MAE M. THOMPSON, v. SEABOARD
AIR LINE RAILROAD COMPANY.

(Filed 30 June, 1958.)

THOMPSON *v.* R. R.

1. **Pleadings § 22—**

    The trial court may permit a pleading to be amended at any time provided the amendment does not modify or change the cause of action or deprive defendant of a fair opportunity to present his defense. G.S. 1-163.

2. **Railroads § 15—**

    A railroad company has a right to change the elevation of different portions of its right of way to suit its convenience, and its acts in doing so cannot impose liability upon it to abutting land owners.

3. **Municipal Corporations § 25b—**

    The right of the State to control public ways has been delegated in regard to streets to municipalities, G.S. 160-222, and when a city acts for public convenience under the authority granted it in raising or lowering the grade of a street, any diminution of access from abutting property is *damnum absque injuria.*

4. **Same:    Railroads § 15—**

    The fact that a street is established across railroad tracks subsequent to the location and construction of the railroad does not diminish the character of the street as a public way, and after the street is established the railroad has no more right to impair or prevent its use than any other property owner would have to change the grade or interfere with the use of the street.

5. **Railroads § 15—**

    While a railroad company is given authority to construct its tracks across public ways, it may not construct its tracks or change the grade of the tracks unless it restores the street to a useful condition. G.S. 60-37(6), G.S. 60-43.

6. **Same:    Eminent Domain § 3—**

    If a railroad company, in the performance of its duty to restore a street to a useful condition after it has changed the elevation of its tracks at the street crossing, is required to go beyond the railroad right of way and change the grade of the street, and such change of grade impairs access to the street of an abutting property owner, the railroad company must pay compensation to such abutting owner for the resulting diminution in value of the land.

7. **Municipal Corporations § 25b:    Railroads § 15—**

    If a railroad company in changing the grade of a street beyond its right of way, incident to the restoration of the street after changing the elevation of its tracks at a grade crossing, asserts the municipality's governmental immunity in changing the grade of the street beyond its right of way, it must plead the facts which would relieve it of liability on this ground. G.S. 1-135.

8. **Same:    Pleadings § 22—**

    This action was instituted against a railroad company by an abutting property owner to recover compensation for the diminution in value of his property resulting from impairment of access to the street incident to the change in grade of the street beyond the right of way of the rail-

road company. Plaintiff alleged that the acts of the railroad company were unlawful. *Held:* An amendment charging that the change of grade was for the benefit of the railroad company is immaterial when the railroad company fails to allege or prove that its acts in changing the grade of the street were done under the governmental immunity of the city, and therefore the court had the power to allow the amendment during the trial.

9. **Municipal Corporations § 25b:　　Railroads § 15—　　Evidence held insufficient to show that change of grade of street was made under immunity of city.**

Evidence that a railroad company for its own purposes changed the elevation of its tracks at a grade crossing, that incident to its duty to restore the street to usefulness as a public way, it was required to change the grade of the street beyond its right of way, and that the municipality merely gave the railroad company permission to perform the work in accordance with the railroad company's plans and specifications, *is held* to disclose that the change in grade was for the benefit of the railroad and was not a function of the city nor done for the city's benefit, and, therefore, is insufficient to support the defense that the railroad company, in changing the grade, was clothed with the governmental immunity of the city.

HIGGINS, J., dissenting.

APPEAL by defendant from *McKeithen, S. J.,* October 7, 1957 Term of RICHMOND.

Plaintiffs are the owners of property abutting on what they designate in the complaint as Bridges Street and Railroad Street. This action was brought to recover damages done to that property by closing Railroad Street and changing the grade of Bridges Street.

Hamlet is an important junction point for defendant. Its main north-south line intersects its Wilmington-Charlotte line there. The intersection is at right angles. Defendant has a right of way 200 feet in width. Prior to 1955, interchange between the main line and the Wilmington line was by what the parties call "old wye."

Bridges Street runs southwardly through the town and crosses old wye and the main line at grade. The parties stipulated "that for many years prior to 1955, Bridges Street was and has at all times subsequent thereto been and now is a public street in Hamlet. . ." It was also stipulated that the railroad, including old wye, was laid out and in operation before Bridges Street was established.

Plaintiffs are the owners of two tracts of land fronting on Bridges Street. On the tract on the west side they had erected two buildings. This tract and the buildings erected thereon are partly within and partly outside defendant's right of way. Plaintiff's other tract lies on the east side of Bridges Street. Its southern boundary is the northern

line of defendant's right of way. A three-story brick building is situate on this tract.

In 1955 defendant concluded that it should relocate its wye so as to lengthen the arc and thereby reduce the acute curve existing in the old wye. To accomplish this it was necessary to make a fill on defendant's right of way. The elevation of the new wye necessitated raising Bridges Street at the new intersection. The fill also closed what plaintiffs designated in their complaint as Railroad Street. The answer denied there was any such street and asserted that the use of this area by the public was with the permission of the railroad. Defendant prepared detailed plans of the proposed changes which it transmitted to the governing authorities on 7 June 1955 with the request that the town issue "a permit to proceed with the construction of this connecting track across Bridges Street. . . upon the terms outlined herein." Permission to do the proposed work was granted on 22 June 1955.

The work was done in accordance with plans prepared and submitted by the railroad to the town. The point where the new wye crosses Bridges Street is 58 feet north along Bridges Street from the old wye crossing. Bridges Street was raised 3.48 feet at the new intersection. This put the new intersection .6 foot higher than the old intersection.

The northern line of defendant's right of way is approximately 50 feet north of the new wye. Plaintiffs' property is north of the right of way. The elevation of Bridges Street was raised at its intersection with the northern line of the right of way 3.69 feet. The fill was continued in Bridges Street beyond the right of way line. At a point 25 feet north of the right of way a fill of 2.95 feet was made, and 25 feet beyond that point a fill of 1.86 feet was made. The amount of fill continued to decrease and terminated at a point 96 feet north of the right of way line, or about 146 feet northwardly from the point where the new wye crosses Bridges Street. The point where the fill terminates is near the northern corners of plaintiffs' property. The railroad paved the area of the street in which it had placed the fill. It placed curb and gutter in accordance with the terms of its letter to the town requesting permission to make the change.

Sections 7 and 9 of the Complaint read:

"7.    That about the month of .. .................... 1955, the defendant, its agents, servants and employees, entered in, onto and upon Railroad Street, filled the same with dirt to the extent of about three feet deep on the Hamlet Avenue end, and to the extent of about eight feet deep on the Bridges Street end fronting plaintiffs' property, laid a railroad track thereon and appropriated the entire street to its exclusive use and has been and still is using the same as a railroad track and has completely blocked the entrance to plaintiffs' property from Railroad Street. That in addition to filling in and blocking off Rail-

road Street the defendant, its agents, servants and employees, entered in and upon its intersection with Bridges Street to a depth of some 8 feet at the intersection, and defendant wrongfully extended said fill for some........feet along Bridges Street towards the Northeast for a distance of practically the entire frontage of plaintiff's property thereby practically burying plaintiffs' brick buildings and cutting off access to the same from said street except by ladders or otherwise."

"9. That defendant's entry in, on, and upon said streets and its appropriation and use of the same as aforesaid, has been done wrongfully and unlawfully in violation of plaintiffs' right to have said streets left open, all without permission of plaintiffs, against their will, and over their protests, to their great hurt, injury and damage. That the aforesaid acts of the defendant herein complained of, are not only wrongful and unlawful and *for the use and benefit of the defendant,* but amounts to a taking of plaintiffs' property and appurtenances thereto by defendant, thereby practically destroying the value of plaintiffs' said property without any compensation or tender of compensation to plaintiffs therefor." (Italics added.) The italicized words were inserted by amendment after the evidence had concluded.

Defendant denied the allegations of sections 7 and 9. It supplemented its denial of the facts alleged in section 7 by asserting: "This defendant says in connection therewith that the filling referred to was wholly on its own right of way and within its property rights, and that it has not wrongfully trespassed upon the plaintiffs' property or their rights." It supplemented its denial of the facts alleged in section 9 by asserting: "it has not taken any of the property of the plaintiffs and has confined its construction efforts within its own right of way and in providing facilities for the public to cross its tracks."

The parties stipulated at the trial that the boundaries between the respective properties were as indicated on a map prepared by court-appointed surveyors, and that the plaintiffs were the owners of the lands claimed by them as so shown. They further stipulated: "The damages now sought in this action are limited to such as flowed from defendant's alleged changes of Bridges Street; and no claim is now made by the plaintiffs for any damages resulting from any alleged change that may have been made of any other street."

The court submitted issues which were answered by the jury as follows:

"1. Did the defendant, Seaboard Air Line Railroad Company, raise, or cause to be raised, the elevation of Bridges Street abutting the property of the plaintiff?
"Answer:  Yes

"2. If so, was the property of the plaintiffs damaged as a result of said elevation?

"Answer:   Yes

"3. If so, what amount of damages, if any, are the plaintiffs entitled to recover?

"Answer:   $30,000.00."

The court instructed the jury to answer the first issue in the affirmative. Judgment was entered on the verdict in favor of plaintiffs and defendant appealed.

*Douglass & McMillan and Jones & Jones for plaintiff, appellees.*
*Bynum & Bynum and Varser, McIntyre, Henry & Hedgepeth for defendant, appellant.*

RODMAN, J.   While defendant brings forward 130 assignments of error, we think the basic question involved is presented by three of these assignments: (1) Permitting the amendment to the complaint after the presentation of the evidence; (2) the motion to nonsuit; and (3) the court's instruction to the jury to answer the first issue in the affirmative.

A trial court may permit a pleading to be amended at any time unless the amendment in effect modifies or changes the cause of action and deprives defendant of a fair opportunity to assemble and present his evidence relative to the matters asserted in the amendment. G.S. 1-163.

To determine the materiality of the amendment we examine the pleadings without the amendment to ascertain what issues arise on the pleadings. If the issues raised by the amended pleadings assert a different right of action presenting different issues, then the amendment is material, and defendant is entitled to an opportunity to prepare its defense and offer evidence on the issue so raised. Did the phrase "and for the use and benefit of the defendant," inserted in section 9 of the complaint add anything to the invasion of plaintiffs' rights as originally asserted? The answer to the question is found in the law which determines the motion to nonsuit and the propriety of the instructions with respect to the first issue.

What wrongful act was charged in the complaint and what defense did defendant assert? The basis of asserted liability is found in section 7 of the complaint. It alleges defendant took possession of two public streets in Hamlet on which plaintiffs' property abutted and, by fills in these streets, denied plaintiffs access thereto. Defendant denied this allegation. The denial raised two questions: (a) were the areas public streets, and (b) did defendant make the fill? In addition and as an affirmative defense it asserted that the fill was made on its

right of way in the lawful use of its property and in providing facilities for the public to cross its tracks.

When the case came to trial the parties by stipulation eliminated issues originally raised (a) as to plaintiffs' title to the area for which plaintiffs assert a right to recover, (b) the location of the line separating the right of way from the land owned absolutely by plaintiffs, (c) the nature of the area which plaintiff designated as Bridges Street, defendant conceding that it was a public way although established after the railroad was constructed, (d) that no liability existed for work done in the area designated as Railroad Street (presumably for the reason that it was not a public street but a way used with the permission of the railroad which it could terminate at any time.) The stipulation which the parties made reduced the issues touching liability raised by the complaint as originally drafted to this fundamental question: Did defendant change the grade of the street abutting plaintiffs' property outside and beyond the right of way? Viewed in the light of the stipulation, plaintiffs' claim, and the court's charge, this was the issue submitted to and answered by the jury.

The fact that the grade of Bridges Street was changed from a point south of the new wye to a point northwardly and outside of the right of way and across the front of plaintiffs' property is not controverted; nor is it controverted that the work was done by a contractor secured and paid by defendant.

Defendant insists that these admitted facts do not establish liability because (1) it had the right to make such fills on its right of way as it deemed appropriate in the conduct of its business; (2) in the exercise of its rights it could change the grade at Bridges Street within the bounds of its right of way; (3) the change in the elevation of Bridges Street within the right of way necessitated a change in the elevation beyond the right of way if the public was not to be deprived of the use of Bridges Street where it crossed the right of way; (4) the town had the right to change the grade of the street for public benefit and as it authorized or permitted defendant to change the grade, the permission so granted immunized defendant from liability.

An analysis of defendant's position is necessary to pass on its assignments of error. Legal principles pertinent to the questions raised are, we think, well settled.

Defendant had a right to change the elevation of different portions of its right of way to suit its convenience. No liability exists for such changes. *Brinkley v. R.R.*, 135 N.C. 654. That right is not here controverted.

Control of public ways (highways, streets, and navigable waters) is vested in the sovereign, the State, and subject to constitutional limitations, the Legislature may regulate the location, width, eleva-

tion, and use of these ways. *Clayton v. Tobacco Co.,* 225 N.C. 563, 35 S.E. 2d 691; *Guano Co. v. Lumber Co.,* 168 N.C. 337, 84 S.E. 346; *Dalton v. Brown,* 159 N.C. 175, 75 S.E. 40; *Butler v Tobacco Co.,* 152 N.C. 416, 68 S.E. 12; *Elizabeth City v. Banks,* 150 N.C. 407, 64 S.E. 189; *S. v. Yopp,* 97 N.C. 477. The Legislature, in the exercise of its discretion, may delegate to a municipality or other agency its power to regulate and control for public use streets and highways. *Cab Co. v. Shaw,* 232 N.C. 138, 59 S.E. 2d 573; *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650. The Legislature has authorized municipalities to control streets with the right to "make such improvements thereon as it may deem best for public good . . . and regulate, control, license, prohibit, and prevent digging in said street. . ." G.S. 160-222.

When a city acts for public convenience under the authority granted it by the Legislature and raises or lowers the grade of a street, any diminution of access by an abutting property owner is *damnum absque injuria.* The abutting property owner can neither prevent the change by injunction nor recover damages for the diminished value of his property, when the work is done in conformity with plans designed to promote public convenience. *Sanders v. R.R.,* 216 N.C. 312, 4 S.E. 2d 902; *Jenkins v. Henderson,* 214 N.C. 244, 199 S.E. 37; *Calhoun v. Highway Com.,* 208 N.C. 424, 181 S.E. 271; *Wood v. Land Co.,* 165 N.C. 367, 81 S.E. 422; *Jones v. Henderson,* 147 N.C. 120; *Tate v. Greensboro,* 114 N.C. 392; *Wright v. Wilmington,* 92 N.C. 160; *Meares v. Wilmington,* 31 N.C. 73; 18 Am. Jur. 841, 842.

The fact that Bridges Street, where it crossed defendant's right of way, was established subsequent to the location and construction of the railroad did not diminish its character as a public way. The railroad, after the street was established had no more right to impair or prevent its use than any other property owner would have to change the grade or interfere with the use of a street constructed by a city over his land. Presumably the railroad was duly compensated for the impairment of its property rights when the street was established. *R.R. v. Goldsboro,* 155 N.C. 356, 71 S.E. 514.

Legislative sanction is necessary before a railroad may occupy a public way. *Edmonds v. B. & O. R.R. Co.,* 114 U.S. 453, 29 L. Ed. 216; *Butler v. Tobacco Co., supra; S. v. R.R.,* 153 N.C. 559, 69 S.E. 621; *Pedrick v. R.R.,* 143 N.C. 485; 44 Am. Jur. 301, 74 C.J.S. 512-513. Because of the benefit accruing to the public in the operation of railroads, the Legislature has granted to them the power to condemn private property, G.S. 60-37(2), and to construct their roads across public ways, but with the mandate to "restore the. . . street. . . thus intersected or touched, to its former state or to such state as not unnecessarily to have impaired its usefulness." G.S. 60-37(6). This provision is supplemented by G.S. 60-43 which again commands rail-

roads, when crossing established roads, to "so construct its works as
not to impede the passage or transportation of persons or property
along the same." This provision, inserted in the Act of 1852 incor-
porating the Western Railroad, was codified as a part of the public
laws of the State in the Revised Code, c. 61, sec. 30. Similar provi-
sions are to be found in the charters issued by the Legislature to
railroads during the early part of the nineteenth century.

Notwithstanding the legislative authority and municipal approval
for a public service corporation to use a street or highway if the
use is such as to impose an additional burden or effect a taking of
the property of an abutting owner, compensation must be paid.

Where a railroad accepts the benefits of statutory authorization
and changes the grade of a street or highway it must assume and
comply with the burden imposed and restore the street to a useful
condition. If, to meet the burden so imposed, it becomes necessary
to go beyond the railroad right of way and change the grade of a
street, thereby impairing access of an abutting property owner, com-
pensation must be paid for the diminution in value resulting from
the denial of access.

The rule has been repeatedly applied to situations factually simi-
lar to this case. *Powell v. R.R.*, 178 N.C. 243, 100 S.E. 424; *Bennett v.
R.R.*, 170 N.C. 389, 87 S.E. 133; *Kirkpatrick v. Traction Co.*, 170 N.C.
477, 87 S.E. 232; *Brown v. Electric Co.*, 138 N.C. 533; *Moore v. Power
Co.*, 163 N.C. 300, 79 S.E. 596; *Clayton v. Tobacco Co., supra; Pitts-
burgh C.C. & St. L. Ry. Co. v. Atkinson*, 97 N.E. 354; *Zehren v. Mil-
waukee Electric Railway & Light Co.*, 41 L.R.A. 575; *Williamette Iron
Works v. Oregon Railway & Navigation Co.*, 29 L.R.A. 88; *Baltimore
& O. R. Co. v. Kane*, L.R.A. 1916 C 433; *S. B. Penick & Co. v. New
York Cent. R. Co.*, 111 F 2d 1006; *Cincinnati, N. O. & T. P. Ry. Co. v.
City of Chattanooga*, 64 S.W. 2d 196 (Tenn.); *Chesapeake & O. Ry.
Co. v. Wadsworth Electric Mfg. Co.*, 29 S.W. 2d 650 (Ky.); *Shrader v.
Cleveland, C., C. & St. L. R. Co.*, 89 N.E. 997 (Ill.); *Jordan v. City
of Benwood*, 26 S.E. 266 (W.Va.). Notes, 22 A.L.R. 171, 172; 1 Elliott
Roads & Streets 4th Ed, sec. 554.

The complaint charged the defendant with changing the grade of
Bridges Street with resulting damage to plaintiffs. Such a change by
an individual or private corporation is unlawful. An answer which
denies making the change puts only that question at issue. If defendant
would justify his conduct with governmental immunity he must plead
the facts which would relieve him of liability. G.S. 1-135; *Cohoon v.
Swain*, 216 N.C. 317, 5 S.E. 2d 1; *Raynor v. R.R.*, 129 N.C. 195
(eviction from train for failure to comply with rules); *Burris v. Bush*,
170 N.C. 394, 87 S.E. 97 (slander); *Sigmon v. Shell*, 165 N.C. 582,
81 S.E. 739 (false arrest); *Lee v. Eure*, 82 N.C. 428 (discharge in

bankruptcy); *Smith v. Lumber Co.,* 140 N.C. 375 (estoppel by judgment); *Smith v. Newberry,* 140 N.C. 385 (accord and satisfaction); *Rountree v. Brinson,* 98 N.C. 107 (usury); *White v. Logan,* 240 N.C. 791, 83 S.E. 2d 892 (payment.)

It is manifest that the answer to section 7 of the complaint where the wrongful change of grade is alleged is nothing more than denial. It merely asserts that the filling was confined to the right of way and hence not unlawful. But plaintiffs were not complaining of that fill. It was the fill beyond the right of way which plaintiffs made the base for their claim for damages.

Apparently defendant recognized the necessity of pleading justification for the work it did. However, it merely said it "has confined its construction efforts within its own right of way and *in providing facilities for the public to cross its tracks.*" It may well be doubted whether this is sufficient allegation to be supported by evidence that in making the fill outside of the right of way defendant was acting not in its own behalf but only as agent of the town of Hamlet. If not sufficient, no issue was presented and certainly the amendment was immaterial.

The appeal ought not, however, to be determined by a technical question of pleading. We treat, therefore, the plea as sufficient. It is not enough, however, to plead facts constituting a defense. There must be evidence to support the plea and when the plea is a confession and avoidance or affirmative defense the burden of proof is on him who would relieve himself from liability. *White v. Logan, supra; Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16; *Joyce v. Sell,* 233 N.C. 585, 64 S.E. 2d 837; *Gibson v. Ins. Co.,* 232 N.C. 712, 62 S.E. 2d 320; *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742; *Williams v. Ins. Co.,* 212 N.C. 516, 193 S.E. 728; *Wilson v. Casualty Co.,* 210 N.C. 585, 188 S.E. 102; *Rumbough v. Improvement Co.,* 109 N.C. 703.

Treating the plea of governmental immunity as adequately made, the only remaining question is: Was there any evidence to support that plea?

The evidence without contradiction establishes these, and only these facts:

(1) Defendant for its convenience wished to relocate its wye. To do so in conformity with its wishes would necessitate a fill on its right of way.

(2) The fill would terminate at the edge of the right of way in an embankment more than three and one-half feet above the street at that point. Such an embankment would at least prevent all vehicular traffic on Bridges Street in a southwardly direction.

(3) Not wishing to violate the statutes (G.S. 60-37 (6) and 60-43) prohibiting railroads crossing public ways from interfering with the

public right to use streets, the railroad planned a way for the public to mount the embankment it proposed to construct, thereby permitting the public to continue to use Bridges Street.

(4) The proposed method called for the construction of a fill outside of the right of way. This fill materially impaired plaintiffs' access to the street (a taking of their property. *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129).

(5) The plans so prepared were submitted to the town by an official of the railroad in a letter reading: "I am enclosing herewith a blue print of our drawing No. 16084, which shows a proposed connection track to be constructed in the northeast angle of the Main track crossing at Hamlet. The construction of this connecting track will involve the crossing of Bridges Street with an additional track, also the relocation of an existing unpaved road on the Railroad's right of way. Our plans for constructing new concrete curb and gutter and paving this portion of Bridges Street in a manner satisfactory to the City of Hamlet and to relocate and surface with a mixture of sand and gravel the existing unpaved road also in a manner satisfactory to the city. Will you please let me have a permit to proceed with the construction of this connecting track across Bridges Street and the unpaved road upon the terms outlined herein. . . . " The town, replying to this letter, said: "Your letter of June 7, 1955, file No. 43850 Spl., asking the Town's permission to raise the grade on the northeast side of Bridges Street where the proposed track crosses Bridges Street and that you propose to construct curb and gutter this portion of Bridges Street and that you will relocate and surface with a mixture of sand and gravel this street in a satisfactory manner to the city. This letter will grant you permission to proceed with this work as outlined above."

(6) The work was done in a careful manner and in accord with the plans submitted to the town.

(7) The work was done by the railroad or its contractor and not by the town. The work was supervised by the engineers of the railroad and not by the town.

It is patent that the change in the grade in Bridges Street was for the benefit of the railroad. Manifestly, permission was sought to avoid a complaint and action by the town to prevent defendant from proceeding with its work in Bridges Street. Defendant was not clothed with governmental immunity in the work done outside of its right of way. It follows that no error exists with respect to the exceptions discussed.

We have examined each of the other assignments but find none which is deemed prejudicial or which requires discussion.

No Error.

HIGGINS, J., dissenting. It is conceded the changes in elevating the defendant's tracks were made as a matter of right upon the defendant's own property. it is likewise conceded the work done in elevating Bridges Street in the Town of Hamlet was within the limits of the town's right of way for street purposes. We may assume the Town compensated the owner of the land when it acquired the easement. An easement for street purposes contemplates and includes the right to make such changes in the grade as may be necessary to accommodate public travel so long as the boundaries of the easement are not enlarged.

The Railroad Company exercised its conceded right to elevate its tracks. It became the duty of the Town and the defendant to provide a suitable crossing. The Town had the right to elevate Bridges Street for that purpose and it could exercise the right by having the work done by its own employees or by letting the work to contract, or by authorizing the Railroad Company to do it. Whether the Town paid much or little, or nothing, to the Railroad Company to have the work done does not enlarge the liability, and certainly does not create liability when none previously existed. In the absence of allegation and proof the work of elevating the street was negligently done, there is no liability. I vote to reverse.