# EDWARD W. MEALEY ET AL. *vs.* THE MAYOR AND COUNCIL OF HAGERSTOWN ET AL.

*Title of Statute—Municipal Corporations—Ownership of Electric Lighting Plant—Ultra Vires Contract of Municipal Officers—Estoppel.*

The title of the Act of 1900, ch. 75, is : "An act to provide for the establishment of an electric light plant in Hagerstown, Maryland." The Act itself authorized the municipality of Hagerstown to construct an electric light plant for the purpose of lighting the streets and supplying light and electricity to its citizens.    *Held*, that the Act is not void because in violation of Constitution, Art. 3, sec. 29, which provides that the subject of every law shall be described in its title.

The Street Commissioners of Hagerstown were authorized by Local Code, Art. 22, sec. 191, to contract upon certain terms for the lighting of the city streets for a period not exceeding ten years.    They made a contract with one E. for lighting the city for five years from January 1st, 1896, and agreed that he should have the like contract for a further period of five years provided that before the termination of five years he should have developed a site on the Potomac River or a central station with capacity to supply electric power for operating machinery in Hagerstown.    This contract was assigned to the Hagerstown Railway Company.    The Act of 1900, ch. 75, authorized the city of Hagerstown to establish an electric light plant and prohibited the future lighting of the streets by contract.    The plaintiffs filed a bill alleging that the railway company had complied with all the conditions entitling it to a renewal of the contract for lighting the streets for another period of five years and asked that the municipality be enjoined from constructing an electric light plant or issuing bonds therefor.    *Held*, that since the consideration mentioned for the option to renew the contract was the establishment of a plant to supply electric power not to the municipality but to private parties, this provision of the contract was beyond the power of the Street Commissioners to make, and is not binding on the city, and consequently the Act 1900 does not impair any obligation of the contract.

Every one dealing with the officers of a municipal corporation is charged with knowledge of the extent of their powers, and hence a municipal corporation may set up a plea of *ultra vires* or its own want of power under its charter to enter into a given contract, nor is it estopped from making such defense because the other party to the contract has expended money upon the faith of the agreement.

A municipal corporation which has its own electric plant for lighting the streets may be authorized by the Legislature to supply light to its citizens.

Appeal from a *pro forma* decree of the Circuit Court for Washington County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*J. Clarence Lane* and *Edgar H. Gans* (with whom was *Alexander Neill* on the brief), for the appellants.

*Buchanan Schley* and *J. Augustine Mason* for the appellees.

BOYD, J., delivered the opinion of the Court:

This appeal brings before us for review the *pro forma* decree of the Court below sustaining a demurrer to the amended bill of complaint, filed by the appellants against the appellees. The appellants are taxpayers of Hagerstown and seek to enjoin the defendants from contracting for the construction of an electric light plant, from the purchase or lease of any land or property for that purpose, from issuing or selling any bonds for the purpose of raising money to pay for such electric light plant, land or other equipments, and from levying or collecting any taxes for the payment of the interest or principal of any such bonds. The defendants are the Mayor and Council of Hagerstown, the Board of Street Commissioners and the Tax Collector.

A contract was made in November, 1895, between the Board of Street Commissioners of Hagerstown, and Powell Evans for lighting the streets, avenues and highways of that city with electric light for the period of five years from January 1st, 1896, with a provision for renewal for another five years, which we will have occasion to consider. The Hagerstown Railway Company, of Washington County, Md., is alleged to be the assignee of that contract and is one of the complainants. It is averred in the bill that the company has done all that was necessary to entitle it to a renewal of the contract for five years from January 1st, 1901, and that it had applied for such renewal to the Board of Street Commissioners who had

declined and refused to renew it. An Act was passed in 1898, being chapter 381, of the laws of that year, giving the corporation power to issue bonds "for the purpose of establishing or assisting in establishing a plant in Hagerstown to be used for the purpose of generating electric power to supply light and power, or either of them to the citizens of Hagerstown," and then chapter 75 of the Laws of 1900, was passed authorizing the corporation of Hagerstown to establish a municipal plant. The latter law is alleged by the appellants to be invalid on several grounds—the first of which we will consider is its title, which is "An Act to provide for the establishment of an electric light plant in Hagerstown, Maryland."

The provision of Art. 3, section 29, of the Constitution, that "every law enacted by the General Assembly shall embrace but one subject and that shall be described in its title," has been before this Court as frequently as any in that instrument. In *Davis* v. *State*, 7 Md. 151, in which a similar provision in the Constitution of 1851 was before the Court, its object was said to be to prevent " engrafting upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters," and to enable the members of the Legislature to know from the title the character of the legislation proposed. In *State* v. *Norris*, 70 Md. 91, it was said : " The objects designed to be obtained by the constitutional provision are two-fold. The first is to prevent the combination in one Act of several distinct and incongruous subjects, and the second is that the Legislature and the people of the State may be fairly advised of the real nature of pending legislation." In the case first cited the title was an "An Act regulating inspections in the city of Baltimore," and in the latter, "An Act to add a new section to Article 30, of the Code of Public General Laws, title, 'Crimes and Punishments,' sub-title, 'Rivers,' to come in after section one hundred and seventy-one." In each instance the title was held to be a sufficient compliance with the constitutional provision, although the subject of the Act before the Court in the last case was the prevention of dredging, taking and carrying away of sand

and gravel from the bed of the Potomac River and prescribing the punishment for its violation.    JUDGE ALVEY, in delivering the opinion, said : " Many Acts are passed, and often of great importance, the titles of which are exceedingly deficient in definite and clear description of the subject-matter of the Act. But this Court has ever been reluctant to defeat the will of the Legislature by declaring such legislation void, if by any construction it could possibly be maintained."    So in *State* v. *Fox*, 51 Md. 412, a title which read " An Act to add an additional Article to the Code of Public Local Laws, to be entitled Garret County," and in *Mayor, &c., of Baltimore*, v. *Keeley Institute*, 81 Md. 106, one reading "An Act to provide for the treatment and cure of habitual drunkards," were sustained.    In the former, amongst other things, the Act declared it to be a felony to knowingly enter upon the lands of another and cut down, without his permission, timber of certain sizes with intent to appropriate it to the use of the party so entering, and in the latter case the Act imposed the expenses of the treatment of the habitual drunkards on the city or counties, under the order of the Court.    Many other instances could be furnished, from the reported cases in this State, of titles that have been upheld which are as indefinite and meagre as those we have already mentioned.    As a rule, those which have been held to be contrary to this provision were misleading and calculated to lead the Legislature and others to believe that one kind of Legislation was proposed, while another was attempted to be enacted, which was not germane to the subject mentioned in the title.

No one could read this title without knowing that it was proposed to authorize the establishment of an electric light plant in Hagerstown.    But it is argued on the part of the appellants that it does not show that it was to be established by the municipality, as the provisions of the Act contemplate. It cannot be doubted that the title could have been made more definite and less liable to be questioned by slight changes.    If it had said "a municipal electric light plant" or as seems to be conceded by the appellants, if it had read " by Hagers-

town" instead of " in Hagerstown," it would have been suffi-
cient.   But there is nothing in the title to lead anyone to
believe that it was to be established by some private corpora-
tion, and not by the municipality—the worst that can be said
of it is that it does not say by whom it was to be established.
It certainly does not suggest any attempt to *create* a private
corporation for that purpose, or to amend the charter of one
already incorporated.   In the first place that is not the way
that corporations are created or charters are amended, and
besides there was in 1900 a general law, in force in Washing-
ton County, for the incorporation of electric light companies.
Section 30, class 17 of Art. 23 provides " For the formation
of gas light or electric light companies," and section 111 of that
Article, as amended by Act of 1894, chapter 308, gives cor-
porations formed under that Article " full power to manufac-
ture and sell, and furnish such quantities of electric light or
electric power as may be required or desired in any city or
town of Kent, Talbot, Somerset, Carroll, Montgomery or
Washington Counties, of this State, in which or adjoining
which the same may be located, for lighting the streets, roads,
public or private buildings, or for motive power or for other
purposes."   Section 33 of Art. 3 of the Constitution provides
that " the General Assembly shall pass no special law for any
case for which provision has been made by an existing General
Law," and section 48 of same Article provides that " corpora-
tions may be formed under general laws; but shall not be
created by special act, except for municipal purposes, and except
in cases where no general law exists, providing for the creation
of corporations of the same general character as the corpora-
tion proposed to be created; and any act of incorporation
passed in violation of this section shall be void."   The Legis-
lature therefore had no right to create in 1900, by special Act,
a corporation in Washington County to establish an electric
light plant but it did unquestionably have the authority to
authorize the municipality of Hagerstown to do so.   When,
then, it did have before it "An Act to provide for the estab-
lishment of an electric light plant in Hagerstown, Maryland,"

was it not a fair presumption that it was proposed to give the authority to the municipality? Would any one with the knowledge of the existing law (and the members of the Legislature and others are presumed to have knowledge of it) be misled into the belief by the wording of that title that it was not the municipality that the authority was to be given to? Even if it be conceded that it was possible to give some other corporation or some individual the power to establish an electric light plant there under such a title, would it not be notice to the legislators and the public that an Act was pending, which presumably was intended to confer upon the municipality the right to establish an electric light plant, and to call upon them to inquire into it if they thought proper to do so? If it be a sufficient compliance with this requirement that an Act be entitled "An Act to amend Article 95 of the Code of Public General Laws, by adding an additional section thereto," as was decided in *Second German American Building Association* v. *Newman*, 50 Md. 62, or "An Act to add an additional section to Article 93 of the Code of Public General Laws of Maryland, to come in after section 326, and to be known as section 326A," as was determined in *Garrison* v. *Hill*, 81 Md. 551, why should this Act be declared invalid, on the ground that its title does not show who was to establish the plant? No one from reading those titles could have known *what* amendments to those articles were proposed, but they did know that *some* amendments were contemplated, and those interested in ascertaining what they were were called upon to examine the Acts. No tax-payer in the City of Baltimore or in the counties was informed by the title of "An Act to provide for the treatment and cure of habitual drunkards," that it was proposed to treat them at the expense of the public, but the title was held sufficient.

The Courts are not authorized to declare legislation invalid merely because the title has not disclosed *how an Act is to be carried out.* Nor is it necessary to state the details of the Act. All that can reasonably be expected or required is that the title shall give such notice of the legislation as would

attract the attention of the ordinary reader, and not be misleading as to the object of the statute. This Act provided for its submission to the qualified voters of Hagerstown before it was to take effect. It was passed at a time, as we have seen, when the Legislature had no power to incorporate a private corporation for such purposes, the title did not use language that could properly cause any one to conclude that the plant was to be established by private enterprise, and not by the municipality, and the presumption was, under the circumstances, that the establishment of a plant of this character "in Hagerstown" was to be *by Hagerstown*. It was said at the argument that municipal ownership of lighting plants was unusual in this State. There is nothing in the record on that subject, but we know that, at the time this law was passed, in Cumberland and Frederick, the county seats of counties adjoining Washington, they were owned by the municipalities, and therefore we cannot assume that any one was or could have been misled for that reason. We are of the opinion that the Act was not invalid by reason of the title and without discussing the various sections of the Act we do not find anything in them that is not germane to the subject-matter.

We will next consider the effect of the provision of the Act which prohibits lighting at municipal expense of the streets, etc., after this plant is put in operation and completed. In doing that we are called upon to construe the contract made by the Board of Street Commissioners of Hagerstown with Powell Evans, on November 11th, 1895, as the appellants contend this Act impairs the obligation of that contract and is void for that reason, as the Legislature would not have authorized the municipality to build its own plant and prohibit the payment for municipal lighting to any other party, if it had known of this contract, and therefore this whole Act must fall. It provides that the party of the second part, who was Evans "shall have the contract for lighting the streets, avenues and highways of Hagerstown. with the Schuyler or any other equally as good system, for a period of five years

after this contract is in force, beginning on or before January 1st, 1896." Then after some provisions which do not affect this controversy, there follows the clause which is specially involved in this case and which is as follows : " and said party of the second part shall have the like contract for a further period of five years, or ten years in all, provided, before the termination of the five years said party of the second part or his assigns shall have developed, or caused to be developed, one of the sites known as Dam Nos. 4 or 5 on the Potomac River or any other site on the Potomac River, or any other sort of central station of like capacity to the one on the Potomac River, to supply electric power for operating machinery in Hagerstown, in accordance with the provisions of the ordinance granted Powell Evans or his assigns, for that purpose by the Mayor and Council of Hagerstown."

The contract authorized Evans to assign it and the bill alleges that it was assigned to the Hagerstown Railway Company of Washington County, Maryland, which is " entitled to the exercise of all the rights given under said contract or under the ordinances aforesaid." The charter of the railway company is not filed with the bill and we have nothing before us as to its power to make a contract for furnishing light to Hagerstown, excepting the general allegations above. If it is only incorporated as a railway company, and has not had the power of an electric light company conferred on it, it might well be questioned whether it could make such a contract as the one before us, but under the allegations in the bill we will assume, in passing on the demurrer, that it has such power. Section 191 of Art. 22 of Code of Public Local Laws, as amended by Chapter 65 of Laws of 1892, provides that " The said Board of Street Commissioners shall have control of the lighting of the town, with power to provide the material, employ lighters and other necessary labor, and to make all needful provisions therefor, and to make such changes or alterations as from time to time they may deem proper or necessary, with the power to contract with any person, corporation or association for such lighting ; provided that the cost under

any such contract for lighting shall not exceed the sum of six thousand dollars for any one year, nor shall such contract be made for a period exceeding ten years." The Mayor and Council are then authorized and required to provide for the cost of lighting, etc. The Street Commissioners, by the contract above set out, contracted for five years, beginning on or before January 1st, 1896, and undertook to give Evans or his assigns, the right to contract for five more years, provided he or his assigns developed or caused to be developed one of the sites on the Potomac River " or any other sort of central station of like capacity to the one on the Potomac River, *to supply electric power for operating machinery in Hagerstown*." The bill alleges that the railway company, the assignee of Evans, has performed all the conditions required by the contract and had erected a central station of like capacity to the site on the Potomac River, and is now able and ready to supply electric power in operating machinery in Hagerstown. The question, therefore, to be considered by us is whether the Board of Street Commissioners had the power to provide for a renewal on such conditions.

Section 191 of the charter, above cited, gave them the power to make a contract for lighting the town for a period not exceeding ten years, but they did not make the contract for that period, but only for five years. They undertook to bind the city for an additional term of five years, provided Evans complied with the conditions named, but did not bind him to furnish the lights for that period. He was therefore in the position that if at the end of the first five years he thought the contract price was a desirable one, he could continue it by complying with the conditions, but if it was not to his advantage he could simply decline to do so. It is therefore not as if the contract had been made originally for ten years and both parties were bound by it. Keeping that in view, let us see what the consideration was to be to entitle Evans, or his assigns, to the renewal. The contract itself determines that, as it provides he could have it if he developed one of the sites on the Potomac River, or a central station of

like capacity, "to supply electric power for operating machinery in Hagerstown, in accordance with the provisions of the ordinance granted Powell Evans, or his assigns, for that purpose by the Mayor and Council of Hagerstown." The ordinance which had been passed the previous May, authorized him, his heirs and assigns, to erect poles and string wires for the purpose of supplying electric current within the corporate limits, " provided that an electric current for motive power for machinery shall be supplied in the city of Hagerstown as a necessary condition of the use of the powers conferred in this ordinance." The Street Commissioners have nothing to do with supplying electric power for operating machinery· Their powers were limited, by the terms of the charter, to the discharge of the duties therein enumerated, and such other matters as are incident to them. It is true that anything they might incidentally do for the benefit of the citizens of the town, in connection with their duties, would not necessarily invalidate what they were authorized to do, if it did not involve the expenditures of public monies, for the benefit of private parties, and hence it was held by the Circuit Court for Washington County in the case of *Mayor, &c., of Hagerstown* v. *Board of Street Commissioners et al.*, referred to at the argument, that paragraph seven of this contract, requiring Evans to furnish and maintain an incandescent lighting system, did not render the contract for five years invalid, as the evidence showed that it in no wise affected the price paid for the lights, but this clause presents another question. The consideration for the renewal is set forth on the face of the contract, and that not being for the benefit of the municipality, for which the Commissioners could act, but for the benefit of such parties as may have occasion to use electric power for operating machinery, they had no authority to bind their successors to enter into a contract to pay the price named for another term of five years, in order to aid those engaged in operating machinery. The case being before us on the demurrer to the bill, there is of course no evidence on the subject, but when we see the one party de-

manding the fulfillment of the contract and the other refusing to carry it out, we cannot fail to reach the conclusion that it is because the one believes it to be beneficial to it and the other thinks it not advantageous to it. Nor can we be unmindful of the fact that the uses of electric current have rapidly developed during the last five years and were being developed, improved and made less expensive when this contract was made. If the Street Commissioners had thought it desirable for the city to renew the contract on the terms provided for during the first five years, without any further requirements of Evans, presumably they would not have inserted a condition of this character, but would have contracted for the ten years, if Evans was willing, or would at least have given him the option without this condition. But the inducement for the renewal is shown by the terms of the contract itself to be the advantage that is to accrue to parties other than those the Commissioners represented. Evans or his assigns might have expended large sums of money to enable him to perform the contract for the first five years, but *that* would not have given him a right to a renewal, and therefore was not the consideration for it. It was only in the event that he performed the conditions of which we have been speaking that he was to have "the like contract for a further period of five years," and we cannot escape the conclusion that it was for that consideration alone the Commissioners undertook to bind themselves, or their successors, to enter into a contract five years afterwards, which at best might *or might not* be a desirable one for the city to make *then*. That they were not authorized to do and having agreed to renew the contract on condition that Evans would do what would benefit private enterprises but not the municipality, for which they could alone act, their agreement is not binding on it.

Many cases might be cited which have held that even the Mayor and Council cannot use the public funds or involve the credit of a municipality to accomplish ends that will only benefit the few and not the public at large, at least without express authority from the Legislature, and there is no reason

why a board of limited powers, such as this, should be per-
mitted to do so.   It is true, as we have seen, that they could
have made a contract for ten years, but when they undertook
to make an arrangement by which Evans was only bound for
five years, but their successors would be for another five years,
if Evans or his assigns desired to so bind them, on the sole
condition that he should do something for the advantage of
private parties (and even a limited class of them), which would
not benefit the municipality which they represented, the mov-
ing cause for the renewal is clearly shown to be one that the
Court cannot sanction or hold to be within their powers.
This is not such a case as that of *Bear Creek Co.* v. *Baltimore*,
87 Md. 84.   There the contract was for two years, " with the
privilege of renewal," which the Mayor and two other officers
were authorized to make by virtue of an ordinance duly passed.
The ordinance was still in force and this Court held that those
three officers could not decline to renew the contract, and if
the city desired to get rid of it, the legislative body, the City
Council, would have to repeal it.   But independent of that dis-
tinction, that was merely a contract for the term of two years
with a privilege of renewal, not dependent upon conditions not
in the original contract.   The Bear Creek Company (or its
assigns) was entitled to a renewal at the end of the two years
unconditionally—excepting, of course, it must have performed
its contract for the original period.   But here, as we have seen,
although Evans, or his assigns, may have performed his con-
tract to the very letter, and may have expended large sums
of money to enable him to do so, he could not for those rea-
sons demand a renewal, nor could he for any reason other
than the one stated above make such demand.   The original
contract gave the municipality all it could possibly want or
require, if the price was satisfactory.   Evans had contracted to
supply and maintain in Hagerstown an electric arc plant
" sufficient to light the streets, avenues and highways of said
town with electric arc lights as required by this contract."
The power of the lights and many other details were stated
and he was even required to furnish an incandescent lighting

system of not less than twelve hundred lights of sixteen candle power at prices therein named.   But notwithstanding all that, his right to a renewal was dependent *solely* and *exclusively* upon his supplying electric power for operating machinery by developing a site or central station such as we have mentioned—thus clearly showing that that, and not the terms of the original contract, was the inducement to bind the city for another term of five years, even if it paid too much for its lights or did not have enough of them to properly light the streets, &c.

Nor can the fact, if that be conceded, that Evans or his assigns has on the faith of the agreement expended money to perform his part of the new contract, estop the municipality or in any way prevent it from setting up this defense.   Every one dealing with the officers and agents of a municipal corporation is charged with knowledge of the nature of their duties and extent of their powers ; and hence a municipal corporation may set up a plea of *ultra vires* or its own want of power under its charter or constituent statute, to enter into a given contract or to do a given act in excess of its corporate powers and authority.   15 *Am. and Eng. Ency. of Law,* 1100 and 1101, where many authorities are cited, including *Baltimore* v. *Eschbach,* 18 Md. 276; *Horn* v. *Baltimore,* 30 Md. 218; and *Baltimore* v. *Musgrave,* 48 Md. 272.

The Board of Street Commissioners having no power to thus bind their successors to renew the contract, it, of course, follows that the objections urged to the Act of 1900, that it impairs the obligation of a contract cannot be sustained and we are relieved of the discussion of some other questions suggested.   It becomes unimportant to determine how far a municipality can give the *exclusive* right to one company to supply electric current, etc., within its corporate limits.   The ordinance only undertook to give it " for the length of time said Evans or assigns *now have* the contract for lighting the streets of Hagerstown." Having determined that he did not have it beyond the five years, it would be useless to discuss the effect of that provision.

Nor is it necessary to determine under the allegations in this

bill how far the municipality can furnish electric power to its citizens. It is certainly authorized to provide for lighting the streets and other public places within the corporate limits. We do not understand it to be seriously questioned that it can furnish light to its citizens, if the Act of 1900 is valid. There are many cases which establish the right of a municipality, owning its plant for lighting, to provide light to its citizens just as it may supply them with water, if the Legislature so authorizes. *Linn* v. *Chambersburg*, 160 Pa. St. 511; *Jacksonville Light Co.* v. *Jacksonville*, 36 Fla. 229 (30 L. R. A. 540); *Crawfordsville* v. *Braden*, 130 Ind. 149; *Opinion of Justices*, 150 Mass. 592. See also cases collected in 10 *Ency. of Law* (2 ed.) 865.

The *pro forma* decree sustaining the demurrer and dismissing the amended bill of complaint will be affirmed.

*Decree affirmed, costs to be paid by the appellants.*

(Decided February 21st, 1901.)