JAMES W. JENKINS v. CITY OF HENDERSON, D. C. LOUGHLIN, T. W. ELLIS AND F. B. HIGHT.

(Filed 12 October, 1938.)

1. **Municipal Corporations § 11d: Principal and Agent § 8b—Ordinarily, an agent is not liable on a contract signed for the principal, even though the contract is ultra vires the principal.**

The individual defendants, acting as a committee for the municipal defendant, executed a contract for the municipality by which it agreed to

assume certain liabilities because of damages which the parties contemplated would result to plaintiff's property by reason of the changing of the grade of a street in front of the property. *Held:* The individual defendants having acted in the scope of their authority and having executed the contract for the municipality as its agents, and having been dealt with by plaintiff solely as representatives of their principal, the contract was the contract of the principal, and the individual defendants may not be held personally liable thereon, even though the contract was *ultra vires* the municipality, since there is no implied warranty on the part of an agent that his principal has authority to execute the contract, and there being no evidence that the individuals represented that their principal had authority to do so.

**2. Municipal Corporations § 12—**

The repairing and grading of its streets is a governmental function of a municipality, and it is not liable in damages resulting to property by reason of a change in grade of the street in front of the property.

**3. Same: Municipal Corporations § 19b—Municipality may not contract to assume liability for damages resulting from change in street grade.**

Since a city is not liable for damages resulting to property by reason of a change in grade of the street upon which the property abuts, such damages cannot constitute a valid consideration for a contract by the city to regrade the private property, and pay for and pour cement thereon in making changes made necessary by the change in grade of the street, and such contract is *ultra vires* the city, since it may not assume a liability where none exists, there being no contention that the city took any part of plaintiff's property or imposed additional burdens thereon.

**4. Municipal Corporations § 19c—**

The fact that the other party has expended money in reliance on a contract of a municipality cannot estop the city from pleading that the contract was *ultra vires*, and there can be no ratification of the contract except by the Legislature.

APPEAL by plaintiff from *Parker, J.,* at March Term, 1938, of VANCE. Affirmed.

This is a civil action to recover damages for breach of contract. The facts in relation thereto are as follows: In 1936 the State Highway and Public Works Commission, with the aid of Federal funds, began the construction of an underpass under the S. A. L. Railway tracks in the city of Henderson, at the Charles Street intersection. This necessitated the grading of Williams Street, on which plaintiff's property abuts. The plaintiff, being apprehensive that the grade was to be materially lowered at the location of his property, on which he maintained and operated a filling station, thereby materially affecting the use and occupation of his property, called upon the city officials in respect thereto. At that time it was understood that the grade would be lowered about 18 inches and the plaintiff was so advised. Plaintiff thereupon made complaint and claimed damages. The board of aldermen appointed a committee composed of the individual defendants, who were authorized

and empowered to represent the city of Henderson in all matters pertaining to and affecting the property of the plaintiff or the street in front of his filling station. After several conferences and after viewing and inspecting the property the said committee agreed that the plaintiff would sustain certain damages for which the city of Henderson would be properly liable. The committee thereupon entered into a contract with the plaintiff as follows:

"State of North Carolina—County of Vance.

"*Know all men by these presents:*

"That the city of Henderson, through its duly authorized committee, for value received, agrees with Col. James W. Jenkins as follows:

"(a) At its own expense and cost, to grade that lot rented by him from Clarence Kerner, *et al.,* to the new street level; upon which lot is located the Serve-All Service Station, and upon which will be located a new service station;

"(b) At its own cost and expense, to remove all concrete;

"(c) At its own cost and expense, to relay certain concrete that is torn up, together with such additional concrete as may be required to complete the new service station as per plans of Gulf Oil Corporation—#C-1179;

"(d) To repay Colonel James W. Jenkins the money advanced by him for cement, which the city will purchase, but for which he is advancing the money;

"(e) The said Colonel James W. Jenkins agrees with the city to furnish, at his own cost, all forms for pouring the concrete—further, the cement which is to be purchased will be stored by him in the garage of the Serve-All Service Station.

"It is well understood that the concrete to be laid is to be of the same mixture and the same depth as the present old concrete.

"It is further understood that the city of Henderson will pour this concrete and do the work in question when called upon by the said Col. James W. Jenkins or his contractor.

"In order that there may be no misunderstanding, the amount of yardage of concrete to be laid is well known to the Street Supervisor, W. M. Coffin, and to the said Col. James W. Jenkins, which amount is estimated at 980 yards.

"To the faithful performance of this understanding, we, as a committee, set our names this the 15th day of March, 1937.

"(Signed)  D. C. LOUGHLIN,<br>
"          F. B. HIGHT,<br>
"          T. W. ELLIS."

This contract was reported to the board of aldermen of the city of Henderson and was approved and ratified by it as recorded in its min-

utes. The plaintiff then proceeded to lease additional land, to demolish the building formerly used as a service station and to make contracts for the purchase of materials for the erection of a new building. The corporate defendant did some grading and poured some concrete on plaintiff's property. It then ceased its work and refused to further comply with the terms of the contract. After notice to the city and after its failure to comply the plaintiff proceeded to do the work stipulated in the contract at a cost of $1,587.60. Plaintiff then demanded of the city the payment of the amount so expended, which payment the defendant declined to make. The plaintiff now seeks to recover said sum as representing the damages sustained by him by reason of the breach of said contract. It is now admitted that the grade of said street was not lowered more than four or five inches.

At the conclusion of plaintiff's evidence, on motion of the defendants, judgment of nonsuit was duly entered. Plaintiff excepted and appealed.

*Perry & Kittrell for plaintiff, appellant.*
*A. A. Bunn, Jasper B. Hicks, and J. H. Bridgers for defendants, appellees.*

BARNHILL, J. If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone, unless credit has been given expressly and exclusively to the agent, and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone. 2 Amer. Jur., page 247, and numerous authorities cited in note. *Way v. Ramsey,* 192 N. C., 549, 135 S. E., 454.

The presumption is that where one known to be an agent deals or contracts within the scope of his authority, credit is extended to the principal alone and the act or contract is his engagement as if he were personally present and acting or contracting. 2 Amer. Jur., page 247. There is no implied warranty by an agent that his principal has authority to make a contract signed by the agent; and the agent, acting within the scope of his authority, is not answerable upon such a contract where his principal is not bound by it merely because he had no authority to enter into the particular contract. *Ellis v. Stone,* L. R. A., 1916 F, 1228. Upon like principle, the American Law Institute has advanced the general rule that an agent making a contract for a disclosed principal whose contracts are voidable because of lack of full capacity to contract, or for a principal who, although having capacity to contract generally, is incompetent to enter into the particular transaction, is not thereby liable to the other party by reason of the failure of the principal to perform, unless he contracts or represents that the principal has capacity

or unless he has reason to know of the principal's lack of capacity and of the other party's ignorance thereof. 2 Amer. Jur., 249; Restatement, Agency, sec. 332.

The plaintiff dealt with the individual defendants as a committee representing the corporate defendant. The committee acted within the scope of the authority vested in them by the board of aldermen and no credit was extended to them as individuals. Furthermore, the contract purports to impose liability only on the city of Henderson. In no event, on the facts appearing on this record, is the plaintiff entitled to recover of the individual defendants. The judgment dismissing the action as to them is sustained.

In repairing and grading its streets a city acts in a governmental capacity and is not liable for resulting damages to abutting property. This question was first considered by this Court in 1848 and exhaustively discussed by *Judge Pearson,* who reached the conclusion that where a municipal corporation has authority to grade its streets it is not liable for consequential damages unless the work was done in an unskillful and incautious manner. *Meares v. Wilmington,* 31 N. C., 73. This case has been approved and consistently followed in many adjudications of this Court since that date. *Dorsey v. Henderson,* 148 N. C., 423, and cases there cited. *Calhoun v. Highway Commission,* 208 N. C., 424. In *Thomason v. R. R.,* 142 N. C., 307, it is stated that this is "the settled doctrine of the State." It is almost universally so held by the state courts in this country, as well as the courts of the United States and of England. 2 Dillon on Municipal Corp., sec. 1040; Pollock on Torts (7th Ed.), 128; 10 Am. and Eng. Enc. of Law (2nd Ed.), 1124 FF. *Transport Co. v. Chicago,* 99 U. S., 635; *Smith v. Washington,* 20 Howard, 135; Cooley on Const. Lim., 542, and notes; *Manufacturers v. Meredith,* 4 Durn. and East Term, 794-796; *Sutton v. Clark,* 6 Taun., 28; *Bolton v. Crowther,* 2 Barn. and Cres., 703.

If a contract is *ultra vires* it is wholly void and (1) no recovery can be had against the municipality; (2) there can be no ratification except by the Legislature; (3) the municipality cannot be estopped to deny the validity of the contract. 3 McQuillin, Municipal Corporations, 2nd Ed., page 817. "A contract of a corporation which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore, beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it; but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of

action upon it." *Central Transp. Co. v. Pullman Palace Car Co.,* 139 U. S., 24, 35 L. Ed., 55; *Realty Co. v. Charlotte,* 198 N. C., 564.

A city is not estopped from pleading *ultra vires* in defense of an action on contract by the fact that the other party to the contract expended money to perform his part of the agreement. *Mealy v. Hagerstown,* 92 Md., 741, 48 Atl., 746. The fact that the other party to the contract has fully performed his part of the contract, or has expended money on the faith thereof, will not preclude the city from pleading *ultra vires.* *Dawson v. Dawson Waterworks,* 106 Ga., 696, 32 S. E., 907; *Mealy v. Hagerstown, supra.* No subsequent action on the part of the municipal corporation will prevent it from denying the validity of such contract. *State ex rel. v. Murphy,* 134 Mo., 548, 56 Am. State Reports, 515, 34 L. R. A., 369; *Realty Co. v. Charlotte, supra.*

There is no allegation in the complaint that in grading Williams Street the city took any part of plaintiff's property or imposed any additional burden thereon. It clearly appears that the consideration for the contract was the apprehended damages resulting from the lowering of the grade of said street where the plaintiff's property abutted thereon.

Conceding that if the city took the property of the plaintiff it could pay just compensation therefor in money or by the services contemplated by the contract, this would not avail the plaintiff here. Such damages as the plaintiff sustained, and such as were within the contemplation of the parties at the time the contract was made, resulted from the lowering of the grade of Williams Street. This constitutes no valid consideration for the contract and the city authorities were without lawful authority to make the contract sued upon or to expend public funds therefor. A municipal corporation cannot assume a liability where none exists and the defendant's act in entering into the contract sued upon was *ultra vires.* The corporate defendant is not liable for any damages resulting from the breach thereof. It follows that the city of Henderson likewise was entitled to a judgment of dismissal on its motion to nonsuit.

Affirmed.