FORBES HOMES, INC., A NORTH CAROLINA CORPORATION v. JOHN G. TRIMPI AND TRIMPI, THOMPSON & NASH

No. 851DC1366

(Filed 6 May 1986)

Contracts § 27.1— existence of contract—conclusion required by evidence and findings

The evidence and findings required a conclusion by the trial court that defendant attorney contracted with plaintiff to reimburse plaintiff from the proceeds of a client's personal injury claim if plaintiff would make monthly mobile home payments on behalf of the client and that defendant breached this contract.

Chief Judge HEDRICK concurring.

Judge MARTIN dissenting.

APPEAL by plaintiff from *Chaffin, Judge.* Judgment entered 10 September 1985. Heard in the Court of Appeals 14 April 1986.

Plaintiff brought this action to recover damages for breach of contract against defendant Trimpi. In its complaint, plaintiff alleged, in summary, that Harley V. Cole, plaintiff's president and general manager, had a conversation with Trimpi concerning a mobile home purchased from plaintiff by Milford Simpson. During the conversation, Trimpi assured Cole that if plaintiff would make monthly payments on the mobile home on behalf of Simpson, Trimpi would see that plaintiff would be reimbursed from the net proceeds of a personal injury claim that Trimpi was handling for Simpson. On the day following the telephone conversation, Trimpi put his assurances in a letter to Cole (the letter being attached to

and incorporated in the complaint). Acting by reason of such assurance by Trimpi, plaintiff made payments on Simpson's behalf from June 1979 through March 1983 in the sum of $4,192.92. In March 1983, Simpson informed Cole that Simpson's personal injury claim had been settled by Trimpi. Plaintiff demanded reimbursement from Trimpi for the payments made for Simpson, but Trimpi refused to make payment to plaintiff. Trimpi paid to Simpson an amount of money sufficient to fully reimburse plaintiff for the payments it made.

Trimpi answered denying some of plaintiff's essential allegations, but admitted the conversation with Cole, the letter to Cole and that Trimpi settled Simpson's claim for $8,500.00, paying Simpson $5,039.76. Trimpi also admitted that he did not advise plaintiff of the settlement and admitted that he had refused to make payment to plaintiff.

After the pleadings were joined, Trimpi moved to dismiss plaintiff's claim for failure to state a claim upon which relief might be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) of the Rules of Civil Procedure. Defendant's motion was granted by the trial court and plaintiff appealed to this Court. We reversed, holding that plaintiff's complaint stated a claim for breach of contract (Johnson, J., dissenting). *Forbes Homes, Inc. v. Trimpi*, 70 N.C. App. 614, 320 S.E. 2d 328 (1984). Upon appeal by defendant to our Supreme Court, that Court by an equally divided vote affirmed our decision. *Forbes Homes, Inc. v. Trimpi*, 313 N.C. 168, 326 S.E. 2d 30 (1985).

Following a bench trial, the trial court rendered judgment for defendant. The evidence at trial and the findings and conclusions of the trial court will be discussed as necessary in the body of our opinion.

*Frank B. Aycock, Jr. for plaintiff-appellant.*

*Trimpi, Thompson & Nash, by Thomas P. Nash, IV, for defendants-appellees.*

WELLS, Judge.

We begin by quoting from our previous opinion in this case:

We reverse the judgment of the District Court. The plaintiff has alleged facts which if offered in evidence would

allow a jury to find the defendants promised the plaintiff that if the plaintiff would make certain payments for a third party, the defendants would retain from the proceeds of a claim they were handling for the third party funds with which they would reimburse the plaintiff. The plaintiff accepted this offer by making the payments and the defendants have refused to reimburse the plaintiff from the proceeds of the settlement for the third party. If a jury should find these facts, the defendant would be liable to the plaintiff for breach of contract.

The foregoing statements constitute the law of this case. When this Court decided this question and remanded the case for further proceedings, the question determined by this Court became the law of the case, both in subsequent proceedings in the trial court and on appeal, on the question of whether plaintiff has sufficiently alleged a claim for breach of contract. *See N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 299 S.E. 2d 629 (1983); *Hayes v. Wilmington*, 243 N.C. 525, 91 S.E. 2d 673 (1956).

The evidence on the question of whether plaintiff was able to prove the contract alleged in its complaint may be summed up as follows. Harley Cole testified:

Forbes Mobile Homes sold a mobile home to Milford Simpson. . . . When we sold it he started making monthly payments to the finance company. . . . Some time in 1979 Milford Simpson ceased to make payments. . . . I told Simpson we would have to take his home back and prepared to foreclose and was preparing to foreclose when Mr. Trimpi called me. Mr. Trimpi said that he was representing Mr. Simpson in a lawsuit on an accident and he wanted to know if I could help Mr. Simpson in any way to keep him from losing his home. I told him I thought we could help him, that Forbes Homes would make the payments if Mr. Trimpi would insure us we could get our money back when settlement was made. I told him to write me a letter to that effect and I got a letter to that effect.

The letter referred to by Cole was in part as follows:

Dear Mr. Cole:

Confirming our telephone conversation on June 7, 1979, it is our understanding that you will continue to make pay-

ments on the mobile home obligation of Milford Simpson in return for Mr. Simpson's assurance that you will be reimbursed in full for the payments you have made or will make to satisfy the creditor.

Subject to Mr. Simpson's approval, which I feel certain he will give, this firm will make restitution to you out of the net proceeds from any settlement or court recovery we make with regard to Mr. Simpson's personal injury claim arising out of an accident occurring on March 17, 1979. If you do not hear from us within ten days from receipt of this letter, you may assume that Mr. Simpson has given us the authority to make such payment to you. The net proceeds shall be the balance remaining after deducting attorney's fees and costs and medical expenses.

John Trimpi testified:

I became acquainted with Milford Simpson when he came to my office some time in 1979 following an automobile accident in which he was involved. At some point I learned that he was living in a mobile home in Columbia in Tyrrell County. I don't know the circumstances but I also became aware that he was having problems making payments. I believe it was in March 1979 that he was involved in an automobile accident which caused him back problems that kept him from working.

. . .

I had a conversation with Mr. Harley Cole concerning the contract on the mobile home. I am not positive about it but to the best of my recollection Mr. Cole called me and asked me about Mr. Simpson's making payments. I could be mistaken but I believe he called me and I told him I was representing Mr. Simpson in an automobile accident. I don't remember the substance of the phone conversation but I remember the substance of a letter I wrote to him confirming that conversation. Mr. Simpson wasn't able to work and wasn't able to make the payments but we did expect there would be some recovery in the litigation that I had filed for him.

I told Mr. Cole . . . that the money we received for Mr. Simpson's benefit would be paid in order to keep them from foreclosing or repossessing the mobile home and essentially that is what I told Mr. Cole in the letter I wrote to him back in June. I told him it would be Mr. Simpson's money paid to him out of the settlement of any kind of recovery and I would get Mr. Simpson's reassurances that he would permit the payment to Mr. Cole out of that money.

The trial court's pertinent findings were:

5. That defendant Trimpi communicated with plaintiff concerning Mr. Simpson's financial inability to keep current with the payments due plaintiff, and defendant Trimpi requested plaintiff to continue making payments on Simpson's mobile home obligation in return for Simpson's assurance that plaintiff would be reimbursed in full out of the net proceeds from any settlement or court recovery.

6. That this communication was confirmed by defendant Trimpi's letter dated June 8, 1979, in which it was stated by defendant Trimpi that plaintiff could assume Simpson had given the authority to make such payment if plaintiff did not hear from defendant Trimpi within ten days.

Despite the evidence and the trial court's findings to the contrary, the trial court concluded that there was no contract between plaintiff and defendant because there was no meeting of the minds. We disagree. The trial court's findings, supported by the evidence, reflect an agreement between plaintiff and Trimpi that if plaintiff would make Simpson's payments, Trimpi would reimburse plaintiff for those payments out of the recovery obtained for Simpson. There being no question or dispute that Trimpi did not keep his promise, i.e., that there was a breach, and no question that plaintiff was damaged by that breach, we therefore reverse the trial court's judgment and remand this cause for conclusions and judgment consistent with the opinion.

Reversed and remanded.

Chief Judge HEDRICK concurs.

Judge MARTIN dissents.

Chief Judge HEDRICK concurring.

I concur with Judge Wells and vote to reverse the judgment entered by the district court and remand for the court to enter a judgment for plaintiff. In my opinion, the facts found by the trial judge dictate a conclusion that Trimpi contracted with plaintiff to pay plaintiff if it would advance the funds for Simpson to save his home. Any other result would ignore the previous decision of this Court and would be a travesty of justice.

Judge Martin seems to indicate that the trial judge squarely found and concluded that Trimpi was acting as an agent for Simpson when he, Trimpi, entered into the contract with Forbes Homes. I cannot find such an emphatic finding of fact in the record and if the trial judge intended to make such a definitive finding, in my opinion, the evidence does not support it. The record is replete, of course, with evidence and findings that Trimpi and Simpson had an attorney-client relationship with respect to Simpson's personal injury and social security claims, but there is no evidence in the record that Trimpi purported to represent Simpson when he negotiated and entered into a contract with Forbes Homes regarding payments to be made on Simpson's home. Trimpi himself testified that he insured the payment. Cole testified that Forbes would make the payments if Trimpi would promise to reimburse Forbes for such payment and would write Forbes a letter to that effect. When Cole told Trimpi to write him a letter regarding the matter, Trimpi sent him a letter in which he stated, "If you do not hear from us within ten days from receipt of this letter, you may assume that Mr. Simpson has given us the authority to make such payment to you." This statement related solely to Trimpi's making payment to Forbes Homes from proceeds of Simpson's personal injury claim. It certainly had nothing to do with obtaining Simpson's agreement that Trimpi would make payments himself to Forbes Homes. Trimpi was at all times in a position to protect his own interests. Forbes was at all times at the mercy of the lawyer.

I vote to reverse and remand for entry of judgment for plaintiff.

Judge MARTIN dissenting.

I dissent. In addition to the findings of fact quoted by the majority, the trial court found the following facts:

7. That defendant Trimpi continued to represent Simpson in an attorney-client relationship in Simpson's claim for personal injuries as a result of the automobile accident as well as a claim for social security disability benefits. That defendant Trimpi's representation of Simpson was solely in a representative capacity as attorney for Simpson.

8. That based upon the totality of the circumstances the Court finds that there was no meeting of the minds of plaintiff and defendant Trimpi that defendant Trimpi would be personally responsible for Simpson's debt, nor did defendant Trimpi receive any benefit or good and sufficient consideration to support his or his firm's personal obligation and responsibility to stand for the debt of Simpson.

9. That the attorney-client relationship existing between defendant Trimpi and Simpson was known to plaintiff, and plaintiff knew that defendant Trimpi and his firm were acting on behalf of Simpson in promising to make reimbursement to plaintiff out of the net recovery. However, that Simpson instructed defendant Trimpi not to pay any of his creditors out of the settlement proceeds when settlement was effected on June 1, 1982. That defendant Trimpi was told by Simpson to disburse the net proceeds to Simpson so that he, Simpson, could deposit same in an Elizabeth City bank and pay creditors himself.

10. That contrary to Simpson's statements and instructions to defendant Trimpi, Simpson did not pay plaintiff any monies, at that time, received from the settlement proceeds.

Plaintiff has not excepted to any of the foregoing findings of fact; they are supported by competent evidence and are, therefore, binding upon this Court. From these facts it is clear that plaintiff knew that defendant Trimpi was acting solely as agent for Simpson in entering into the contract with plaintiff. The trial court expressly found that defendant Trimpi did not assume Simpson's obligation as a personal liability and that plaintiff did not extend credit to defendant Trimpi personally.

> If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone, unless credit has been given expressly and exclusively to the agent, and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone. (Citations omitted.)

*Jenkins v. City of Henderson*, 214 N.C. 244, 247, 199 S.E. 37, 39 (1938). *See* 10 Strong's North Carolina Index 3d *Principal and Agent* § 11 (1977).

The agreement with plaintiff was made by defendant Trimpi as agent for Simpson, his principal. Simpson accepted the benefits of the agreement and, having done so, refused to perform his obligations thereunder or to permit defendant Trimpi to do so. Simpson, not defendant Trimpi, breached the contract. I vote to affirm the judgment of the trial court.