FORBES HOMES, INC., A North Carolina Corporation v. JOHN G. TRIMPI AND TRIMPI, THOMPSON & NASH

No. 326A86

(Filed 4 November 1986)

**Attorneys at Law § 3.1— attorney's agreement to pay on behalf of client—client's refusal to consent—attorney not responsible for payment**

Where plaintiff sold a mobile home to defendant's client, the client suffered an injury, could not work, and became delinquent in his payments on the mobile home, plaintiff agreed to make payments on the mobile home in return for reimbursement from defendant out of any settlement or recovery on the client's personal injury claim, but the client refused to authorize defendant to pay any creditors, plaintiff's action against defendant to recover sums paid on the mobile home should have been dismissed, since defendant's letter indicating that he would pay plaintiff for his expenditures did not constitute a guaranty by defendant of his client's debt, nor did defendant make a personal promise to pay which he breached; rather, defendant acted as agent for his client in establishing a contract between the client and the plaintiff which the client breached when he subsequently revoked authorization for defendant to reimburse plaintiff out of the settlement proceeds.

APPEAL by the defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 80 N.C. App. 418, 342 S.E. 2d 526 (1986), reversing judgment for the defendant entered 10 September 1985 in the District Court of PASQUOTANK County following a non-jury trial.

---

---

In an earlier appeal, *Forbes Homes, Inc. v. Trimpi*, 70 N.C. App. 614, 320 S.E. 2d 328 (1984), the Court of Appeals reversed the trial court's order dismissing the plaintiff's claim pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). The decision of the Court of Appeals was affirmed by this Court by an equally divided vote. *Forbes Homes, Inc. v. Trimpi*, 313 N.C. 168, 326 S.E. 2d 30 (1985). Heard in the Supreme Court 10 September 1986.

*Frank B. Aycock, Jr., for plaintiff-appellee.*

*Trimpi, Thompson & Nash, by John G. Trimpi and Thomas P. Nash, IV, for defendant-appellants.*

BILLINGS, Chief Justice.

The plaintiff seeks to recover from the defendants the sum of $4,192.92 plus interest which it allegedly paid to Midland-Guardian Company on a debt owed by the defendants' client, Milford Simpson, and secured by a mobile home which the plaintiff had sold to Mr. Simpson.

The facts, which essentially are not disputed, are that in 1979 Mr. Simpson became delinquent in his payments on the mobile home because he had been injured in an automobile accident and was unable to work. The plaintiff's president and general manager, Mr. Cole, had a conversation with defendant John G. Trimpi, who was representing Mr. Simpson in pursuing a personal injury action. Following the conversation, Mr. Trimpi wrote Mr. Cole a letter on 8 June 1979 which contained the following:

> Confirming our telephone conversation on June 7, 1979, it is our understanding that you will continue to make payments on the mobile home obligation of Milford Simpson in return for Mr. Simpson's assurance that you will be reimbursed in full for the payments you have made or will make to satisfy the creditor.
>
> Subject to Mr. Simpson's approval, which I feel certain he will give, this firm will make restitution to you out of the net proceeds from any settlement or court recovery we make with regard to Mr. Simpson's personal injury claim arising out of an accident occurring on March 17, 1979. If you do not hear from us within ten days from receipt of this letter, you

may assume that Mr. Simpson has given us the authority to make such payment to you.

In early 1981 Mr. Simpson received $3,328.03 in back Social Security disability payments and began receiving monthly Social Security disability payments effective 1 January 1981. In June 1982 Mr. Trimpi obtained $8,500.00 in settlement of Mr. Simpson's personal injury claim and, acting upon instructions from Mr. Simpson, gave Mr. Simpson a check for $5,039.76, having deducted his fee and costs from the settlement amount. Neither Mr. Trimpi nor Mr. Simpson notified the plaintiff of the settlement, and the plaintiff was not reimbursed for the payments it had made on behalf of Mr. Simpson.

When the plaintiff learned that the settlement had been made, Mr. Cole demanded that Mr. Trimpi reimburse the plaintiff, which Mr. Trimpi refused to do. The plaintiff paid off the remaining debt on the mobile home and, acting pursuant to its recourse rights under the financing arrangement with Midland-Guardian and Mr. Simpson, initiated claim and delivery proceedings against Mr. Simpson to repossess the mobile home. Upon discovering that Mr. Simpson was facing hospitalization and was in extremely poor health, the plaintiff elected not to repossess the mobile home. Instead, it allowed Mr. Simpson to retain the mobile home upon his execution of a new note in the principal amount of $5,521.00. The original note was marked paid.

The plaintiff instituted this action seeking to recover from the defendants the sum of $4,783.67, representing payments of $4,192.92 made on Mr. Simpson's behalf plus $564.85 in interest.

The defendants' motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) was allowed, and in an appeal from the dismissal, the Court of Appeals reversed. 70 N.C. App. 614, 320 S.E. 2d 328. The defendants appealed to this Court and the reversal was affirmed per curiam by an equally divided Court. 313 N.C. 168, 326 S.E. 2d 30. Because the Court of Appeals' decision was affirmed per curiam without opinion by this Court, the opinion of the majority of the Court of Appeals became the law of the case. That opinion contained the following:

The plaintiff has alleged facts which if offered in evidence would allow a jury to find the defendants promised the plain-

tiff that if the plaintiff would make certain payments for a third party, the defendants would retain from the proceeds of a claim they were handling for the third party funds with which they would reimburse the plaintiff. The plaintiff accepted this offer by making the payments and the defendants have refused to reimburse the plaintiff from the proceeds of the settlement for the third party. If a jury should find these facts, the defendant would be liable to the plaintiff for breach of contract.

70 N.C. App. at 615, 320 S.E. 2d at 328-29.

On remand to the District Court of Pasquotank County, the parties waived jury trial and evidence was presented to the trial judge, who entered judgment for the defendants. The judgment contained the following pertinent findings of fact which were supported by the evidence:

5. That defendant Trimpi communicated with plaintiff concerning Mr. Simpson's financial inability to keep current with the payments due plaintiff, and defendant Trimpi requested plaintiff to continue making payments on Simpson's mobile home obligation *in return for Simpson's assurance* that plaintiff would be reimbursed in full out of the net proceeds from any settlement or court recovery. [Emphasis added.]

. . . .

7. . . . . That defendant Trimpi's representation of Simpson was solely in a representative capacity as attorney for Simpson.

8. That based upon the totality of the circumstances the Court finds that there was no meeting of the minds of plaintiff and defendant Trimpi that defendant Trimpi would be personally responsible for Simpson's debt, nor did defendant Trimpi receive any benefit or good and sufficient consideration to support his or his firm's personal obligation and responsibility to stand for the debt of Simpson.

9. That the attorney-client relationship existing between defendant Trimpi and Simpson was known to plaintiff, and plaintiff knew that defendant Trimpi and his firm were act-

ing on behalf of Simpson in promising to make reimbursement to plaintiff out of the net recovery. However, that Simpson instructed defendant Trimpi not to pay any of his creditors out of the settlement proceeds when settlement was effected on June 1, 1982. That defendant Trimpi was told by Simpson to disburse the net proceeds to Simpson so that he, Simpson, could deposit same in an Elizabeth City bank and pay creditors himself.

. . . .

11. That the Court deems it unnecessary to make any findings of fact or conclusions of law concerning the uncontroverted facts that subsequently plaintiff repossessed the mobile home and sold it back to Simpson under a bill of sale in the amount of $5,000.00, nor does the Court determine the extent of any credit which should be given to defendants inasmuch as the Court finds there to be no valid, enforceable contract between the parties affixing personal liability to defendants.

From the judgment for the defendants, the plaintiff appealed again to the Court of Appeals. In an opinion by Wells, J., the Court of Appeals reversed, saying:

The trial court's findings, supported by the evidence, reflect an agreement between plaintiff and Trimpi that if plaintiff would make Simpson's payments, Trimpi would reimburse plaintiff for those payments out of the recovery obtained for Simpson.

80 N.C. App. at 422, 342 S.E. 2d at 528.

Hedrick, C. J. concurred, saying that "[a]ny other result would ignore the previous decision of this Court . . . ." *Id.* at 423, 342 S.E. 2d at 528-29.

Martin, J. dissented, and the defendant appealed to this Court. We reverse.

We begin our analysis by noting that the letter from Mr. Trimpi to Mr. Cole does not constitute a guaranty by Mr. Trimpi of Mr. Simpson's debt. Although Mr. Trimpi's agreement was in writing, satisfying the requirement of the statute of frauds, N.C.G.S. § 22-1, that a promise to answer for the debt or default

of another be in writing, the letter does not promise that Mr. Trimpi will assume personal liability for Mr. Simpson's debt; rather it is a promise to make restitution out of Mr. Simpson's money "[s]ubject to Mr. Simpson's approval."

As this Court said in *Jenkins v. Henderson*, 214 N.C. 244, 247, 199 S.E. 37, 39 (1938):

> If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone, unless credit has been given expressly and exclusively to the agent, and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone.

The findings of the trial judge clearly establish that Mr. Trimpi was not promising to be personally liable for the payment of Mr. Simpson's debt.

The plaintiff in its brief concedes that it does not contend that Mr. Trimpi assumed the obligation to pay the plaintiff from his own funds; it says that it is seeking damages for Trimpi's failure to comply with his personal promise to reimburse the plaintiff out of Mr. Simpson's settlement.

We therefore must determine whether Mr. Trimpi in fact made a personal promise which he breached, or whether he merely acted as agent for his client, Mr. Simpson, establishing a contract between Mr. Simpson and the plaintiff which Mr. Simpson breached when he subsequently revoked authorization for Mr. Trimpi to reimburse the plaintiff out of the settlement proceeds.

In the previous appeal the Court of Appeals held that the defendant would be liable to the plaintiff for breach of contract if the jury (or the judge) should find that

> the defendants promised the plaintiff that if the plaintiff would make certain payments for a third party, the defendants would retain from the proceeds of a claim they were handling for the third party funds with which they would reimburse the plaintiff.

70 N.C. App. at 615, 320 S.E. 2d at 329, and that the defendants refused to reimburse the plaintiff from the proceeds although the plaintiff had accepted the offer by making the payments.

A careful review of the evidence and of the trial judge's findings reveals that the trial judge did not find facts which under the Court of Appeals' previous decision would necessitate judgment for the plaintiff. The finding was not that the defendants would retain the proceeds and reimburse the plaintiff subject only to the plaintiff making certain payments; it was essentially that in the absence of notice to the contrary, the plaintiff could assume that Mr. Simpson had authorized Mr. Trimpi to apply funds from Mr. Simpson's settlement to reimburse the plaintiff if the plaintiff made payments on Mr. Simpson's behalf. Regardless of what might have been the ethical or moral obligation[1] of Mr. Trimpi to the plaintiff to notify it when Mr. Simpson later revoked his authorization for Mr. Trimpi to pay Mr. Simpson's creditors, it is clear from Mr. Trimpi's letter and from the trial judge's findings of fact that Mr. Trimpi's role was that of agent for Mr. Simpson, whose assurance was given through Mr. Trimpi and whose authorization for payment was necessary before Mr. Trimpi could apply the settlement funds to reimburse the plaintiff.

We are not unmindful that an agent may be personally liable for damages caused to third persons by his fraud or false representations "even though he is acting in behalf of his employer, and even though he receives no benefit from the transaction." 37 Am. Jur. 2d, *Fraud and Deceit* § 320 (1968). *See also Norburn v. Mackie*, 262 N.C. 16, 136 S.E. 2d 279 (1964); *Mills v. Mills*, 230 N.C. 286, 52 S.E. 2d 915 (1949). However, in the case *sub judice* there is no allegation that, at the time Mr. Trimpi represented to the plaintiff that Mr. Simpson had authorized payment from the settlement,[2] the representation was false. An agent does not become liable because of his principal's breach of a contract negotiated by

---

1. We do not address any obligations of the defendant Trimpi under the Rules of Professional Conduct which might have arisen under these circumstances.

2. The representation was made when no contrary notice was given to the plaintiff within ten days of the plaintiff's receipt of the 8 June 1979 letter from Mr. Trimpi.

the agent for the principal. *Walston v. Whitley & Co.*, 226 N.C. 537, 39 S.E. 2d 375 (1946).

The letter and the trial judge's findings of fact establish only that Mr. Trimpi, acting as agent for Mr. Simpson, bound Mr. Simpson to an agreement to authorize payment by Mr. Trimpi out of anticipated settlement funds in exchange for the plaintiff's payment of money owed by Mr. Simpson to Midland-Guardian Company. Mr. Simpson's revocation of his authorization constituted a breach by him of that contract; Mr. Trimpi at no time agreed to act contrary to the authorization of his principal.

For the reasons given, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further remand to the District Court of Pasquotank County for reinstatement of the order dismissing the plaintiff's action.

Reversed.